COMMERCIAL RECYCLING CENTER, LTD., an Alaska Limited Partnership, and Gregory Tiplady, Appellants,

v.

HOBBS INDUSTRIES, INC., an Alaska corporation, Hobbs Industries, a Washington corporation, Slana Energy, Inc., an Alaska corporation, Alaska Steam & Diesel, Inc., a Washington corporation, Castle Mountain Mining Co., Ltd., Austin R. Hobbs, and Lori L. Hobbs, Appellees.

No. S–12616.

Supreme Court of Alaska.

April 9, 2010.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellants.

Robert K. Reiman, Law Offices of Robert K. Reiman, Anchorage, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

In 1996 the shareholders of Hobbs Industries, Inc. signed a buyout agreement under which James Cucullu and Gregory Tiplady sold their shares to Austin and Lori Hobbs. The Hobbses experienced difficulty fulfilling the terms of the buyout almost immediately. In 1998 Cucullu and Tiplady sent the Hobbses a letter declaring a rescission of the buyout agreement. Cucullu and Tiplady then sold their reclaimed shares in Hobbs Industries, Inc. to Commercial Recycling Center, Ltd. Commercial Recycling Center, Ltd. sued Austin and Lori Hobbs for an order establishing its ownership in Hobbs Industries, Inc. and for damages, including punitive damages; Tiplady was later added as a plaintiff. The superior court concluded that Cucullu and Tiplady were not entitled to rescission of the buyout agreement. It also found the Hobbses liable to Commercial Recycling Center, Ltd. for the value of Cucullu's and Tiplady's shares provided in the original buyout agreement. Commercial Recycling Center, Ltd. and Tiplady appeal.

We conclude that Cucullu and Tiplady did not legally rescind their agreement with the Hobbses and were not entitled to equitable rescission on a failure of consideration theory. We also conclude that the superior court properly valued the shares of Hobbs Industries, Inc. in determining the damages for the Hobbses' breach of the buyout agreement. We thus affirm these aspects of the superior court's judgment. But we conclude that it was error to dismiss, sua sponte, the breach of fiduciary duty claim for equitable rescission on summary judgment, and we remand for further proceedings relating to this claim.

## II. FACTS AND PROCEEDINGS

### A. Facts

Hobbs Industries, Inc. (HIAK), an Alaska corporation, was incorporated in 1988 in connection with the pursuit of work related to the federal government's Over the Horizon Backscatter project, which had been awarded to Slana Energy, Inc., a corporation owned in part by Austin Hobbs. HIAK's shareholders were Austin Hobbs, Lori Hobbs, Gregory Tiplady, and James Cucullu. Cucullu and Tiplady worked for HIAK, which was one of the principal subcontractors on the Over the Horizon Backscatter project. But in 1992, the federal government terminated the project before completion. HIAK stopped operating as a construction company and thereafter focused on pursuing "termination expenses" for the project. Cucullu and Tiplady left the employment of HIAK as there was no longer a source of income from which they could be paid. At the time the federal project was terminated, HIAK had invested a significant amount of money to acquire and develop the Knik Arm Power Plant and two coal mines. One of these coal mines was transferred to another business, Nerox, and litigation ensued between HIAK and Nerox on that transfer.

HIAK's close-out of the federal project did not go smoothly, and after several years of escalating conflicts over management and ownership of shares, a special meeting of the board of directors of HIAK took place on September 25, 1996. At the meeting, the Hobbses, Cucullu, and Tiplady came to an agreement concerning their ownership interests in HIAK and the proposed settlement with Nerox. The four shareholders entered into a consent resolution that set out terms and conditions for a buyout by the Hobbses of Cucullu's and Tiplady's ownership shares in HIAK. This buyout agreement contained several terms, including: (1) payment to Cucullu for his shares in HIAK at a price of $40,000 plus interest; (2) payment to Tiplady for his shares in HIAK at a price of $24,000 plus interest; (3) an increase in the buyout price for Cucullu and Tiplady "if by independent appraisal it is demonstrated that their respective share of the liquidated value of the [c]orporation is higher [than the agreed-upon amount]"; (4) an assurance that the payment obligations would be personally guaranteed by Austin and Lori Hobbs as well as secured by the major assets of HIAK, including the Knik Arm Power Plant and equipment, an Alaska Railroad land lease, and a 1989 Chevrolet pickup; (5) payment to both Tiplady and Cucullu of a portion of the forthcoming

settlement with Nerox in accordance with respective shareholder interests at the time of the buyout; and (6) a full release of all present and future claims.

The Hobbses began experiencing difficulty fulfilling the payment terms of the buyout almost immediately after the signing of the agreement. In addition, the settlement with Nerox fell through. The Hobbses kept Cucullu and Tiplady informed about HIAK's failure to produce the income needed to fulfill the buyout agreement, but neither Cucullu nor Tiplady indicated dissatisfaction with the delay of the payment schedule required in the 1996 buyout agreement.

In a letter dated June 22, 1998, Cucullu and Tiplady unilaterally declared a rescission of the 1996 buyout agreement. The letter noted that the Hobbses had failed to perform any of the terms and conditions of the agreement and accused the Hobbses of breaching fiduciary duties owed to Cucullu and Tiplady. Cucullu and Tiplady then sold their putative shares in HIAK to Commercial Recycling Center, Ltd. (CRC).

### B. Proceedings

In March 1999 CRC filed a complaint against Austin and Lori Hobbs, HIAK, and several other defendants, seeking an order establishing CRC's ownership of sixty-five percent of HIAK, a full accounting of all of HIAK's finances, and various money judgments, including punitive damages against the Hobbses. Tiplady was added as a plaintiff in CRC's second amended complaint. In April 2002 CRC [1] filed a motion for summary judgment, arguing that Cucullu and Tiplady had rescinded the buyout agreement and seeking an order acknowledging the rescission. CRC claimed that it was entitled to rescission of the buyout agreement primarily because the Hobbses had failed to perform and also because the Hobbses had breached their fiduciary duty to Cucullu and Tiplady. The Hobbses opposed the motion.

In May 2002 Superior Court Judge John E. Reese agreed with the Hobbses and denied CRC's motion for summary judgment,

ruling that Cucullu and Tiplady's 1998 letter claiming rescission of the buyout agreement "was ineffective." Judge Reese then sua sponte granted summary judgment in favor of the Hobbses on the question whether rescission could be an appropriate remedy without addressing the breach of fiduciary duty claims. Judge Reese concluded that the only remaining claims were Cucullu's and Tiplady's claims for breach of the buyout agreement. CRC filed a motion for reconsideration, which was denied.

Superior Court Judge Craig Stowers took over the case after Judge Reese retired. In early April 2006, a three-day bench trial was held on the remaining issues surrounding the 1996 buyout agreement. In December 2006, after concluding that Judge Reese's ruling denying CRC's claim for rescission was "the law of the case," Judge Stowers issued a decision that made several findings.

First, the superior court found that the Hobbses "knowingly breached" the 1996 buyout agreement and "failed to properly secure [CRC's] interests in the assets owned by HIAK." Second, the superior court rejected CRC's argument that it should shift the burden of proof to the Hobbses on the question of the liquidation value of HIAK on the date of the buyout agreement based on a finding of spoliation of evidence. Third, the superior court rejected CRC's argument that it should treat the business valuation of CRC's expert as an independent appraisal requiring an increase in the buyout price of Cucullu's and Tiplady's shares.

In January 2007 the superior court issued a written order finding that HIAK and Austin and Lori Hobbs were liable to CRC for $64,000.00, the amount described in the buyout agreement, plus $33,060.82 in prejudgment interest. CRC appeals Judge Reese's order granting summary judgment to the Hobbses on the question whether the remedy of rescission is available to CRC and Judge Stowers's order valuing HIAK based upon figures provided in the buyout agreement.

---

1. When discussing the proceedings in this case, we use "CRC" to refer to both plaintiffs, CRC and Tiplady.

## III. STANDARD OF REVIEW

■ "We review a grant of summary judgment de novo and affirm if the evidence in the record fails to disclose a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."[2] "We view the facts in the light most favorable to the non-moving party," and "apply our independent judgment to any questions of law, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[3]

■ "Issues of corporate valuation . . . present fact questions."[4] We will set aside a superior court's factual determination only upon a finding of clear error.[5] A factual determination is clearly erroneous if it is unsupported by the record, or we are left with "a definite and firm conviction . . . that a mistake has been made."[6]

## IV. DISCUSSION

### A. CRC's Claims for Rescission of the Buyout Agreement

■ In a letter dated June 22, 1998, Cucullu and Tiplady unilaterally declared a rescission of the 1996 buyout agreement, then sold their putatively reclaimed shares of HIAK to CRC. In April 2002 CRC filed a motion for summary judgment, primarily arguing that because the Hobbses had failed to perform as required under the buyout agreement, Cucullu and Tiplady had effectively rescinded that agreement. The Hobbses opposed this motion. In a single order, the superior court denied CRC's motion for summary judgment and, sua sponte, granted summary judgment to the Hobbses on the question of rescission. Judge Reese concluded that the 1998 rescission declaration was ineffective, that rescission was an inappropriate remedy in the case, and that the only remaining claim in the case was a damages claim for breach of the 1996 buyout agreement. CRC filed a motion for reconsideration, arguing, among other things, that because questions of fact remained on its claim of breach of fiduciary duty—including whether the Hobbses acted in good faith and whether the buyout agreement "was based on a full disclosure of relevant information"—the defendants were not entitled to summary judgment on the issue of whether rescission was an appropriate remedy. Judge Reese denied reconsideration.

We first address CRC's argument that Cucullu and Tiplady's 1998 rescission declaration legally rescinded their agreement with the Hobbses. Because of the Hobbses' alleged failure of consideration, CRC claims that Cucullu and Tiplady had the right to rescind the buyout agreement and that "[t]he rescission declaration should have been deemed by the trial court to be effective. . . ."

■ As we have explained, "[r]escission at law is a suit based upon rescission already accomplished . . . [in which] the court has nothing to do with the rescission itself."[7] Rescission at law occurs where at least one of the parties to a contract rescinds the contract and then turns to a court for enforcement of that rescission and an award of damages.[8] We have never held, however, that one party to a contract has a right to *unilaterally* rescind that contract.

■ One maxim of contract law is the notion "that competent parties are free to make contracts and that they should be bound by their agreement."[9] Thus, "[a]s a matter of judicial policy," we seek to "main-

2. *McCormick v. Reliance Ins. Co.*, 46 P.3d 1009, 1011 (Alaska 2002) (internal citation omitted).

3. *Id.* at 1011–12 (internal citation omitted).

4. *Carver v. Quality Inspection & Testing, Inc.*, 946 P.2d 450, 454 n. 3 (Alaska 1997).

5. *Moffitt v. Moffitt*, 813 P.2d 674, 676 (Alaska 1991).

6. *Money v. Money*, 852 P.2d 1158, 1161 (Alaska 1993).

7. *Knaebel v. Heiner*, 663 P.2d 551, 554 (Alaska 1983).

8. 12A C.J.S. *Cancellation of Instruments* § 5 (2009).

9. *Inman v. Clyde Hall Drilling Co.*, 369 P.2d 498, 500 (Alaska 1962) ("In the absence of a constitutional provision or statute which makes certain contracts illegal or unenforceable, we believe it is the function of the judiciary to allow [people] to manage their own affairs in their own way.").

tain and enforce contracts, rather than enable parties to escape from the obligations they have chosen to incur."[10] One party's failure to perform under a contract gives an injured party who has not already performed a right of non-performance,[11] and it gives an injured party who has already performed a right to sue for a breach of contract remedy. It does not give the injured party a right to unilaterally nullify the contract. Unless contracting parties themselves agree that either party may unilaterally rescind the contract, they have no right to unilateral legal rescission. Because Cucullu and Tiplady had no right to unilaterally rescind their buyout agreement with the Hobbses, their 1998 rescission declaration did not effect legal rescission of that agreement.

■■■ We next turn to CRC's claims for equitable rescission of the buyout agreement. Unlike rescission at law, rescission in equity occurs only upon a court's decree.[12] In those cases, the court must intervene both to rescind the agreement and to award damages.[13]

1. **The superior court did not err in granting summary judgment on the issue of failure of consideration.**

■ CRC's first claim for equitable rescission is based on the Hobbses' failure to meet their obligations under the agreement. CRC maintains that "not even one of the terms of the [buyout] agreement had been complied with by [the Hobbses]," resulting in "a complete failure of consideration." CRC argues that rescission is the only adequate remedy for the Hobbses' failure of consideration and therefore that the superior court was required to equitably rescind the buyout agreement.

■ Distinct from *lack* of consideration,[14] *failure* of consideration occurs when, after an agreement is properly formed, one or both parties fail to deliver the "essence" of the promised performance.[15] In other words, "[f]ailure of consideration is essentially identical to lack of substantial performance."[16] The superior court acknowledged the Hobbses' failure to perform when it found that "[i]t is undisputed that [the Hobbses] had not fulfilled [their] obligations to Cucullu or Tiplady in 1998."[17]

■ As we have held before, in cases of *total* failure of consideration, an injured party may be entitled to equitable rescission of the contract and restitution of benefits conferred on the breaching party.[18] The Re-

10. *Id.*

11. RESTATEMENT (SECOND) OF CONTRACTS § 237 (1981) (providing that a party's duty to render performance is conditioned on there being "no uncured material failure by the other party" to render performance due earlier).

12. *Knaebel*, 663 P.2d at 554 (citing *Lightner v. Karnatz*, 258 Mich. 74, 241 N.W. 841, 842 (1932)).

13. 12A C.J.S. *Cancellation of Instruments* § 5 (2009).

14. *See* 3 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 7:11 (4th ed. 2008) (distinguishing failure of consideration from lack of consideration as follows: "Where no consideration exists, and is required, the lack of consideration results in no contract being formed.... By contrast, when there is a failure of consideration, there is originally a contract when the agreement is made, but because of some supervening cause, the promised performance fails.").

15. *See Estate of Lampert Through Thurston v. Estate of Lampert Through Stauffer*, 896 P.2d 214, 219 (Alaska 1995) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 372, 373 (1981); 5 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1104, at 562 (1964)).

16. *Alaska Prot. Servs., Inc. v. Frontier Colorcable, Inc.*, 680 P.2d 1119, 1123 n. 6 (Alaska 1984) (citing 1 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 133, at 572 (1963)).

17. In contradiction, the superior court also found that none of the actions "taken by HIAK, Austin Hobbs, Cucullu or Tiplady constituted original invalidity, fraud, failure of consideration, material breach or default." We rely, however, on the superior court's more specific findings contained in the same order. In addition to the finding quoted in the main text, the superior court's order detailed the reasons for HIAK's "difficulty fulfilling the terms of the buyout" and "HIAK's failures at producing the finances needed to fulfill the buyout agreement."

18. *See Am. Computer Inst., Inc. v. State*, 995 P.2d 647, 653 (Alaska 2000) (holding that the computer institute's failure to provide students with particular coursework, as required by the institute's enrollment contract, entitled students to a refund

statement of Contracts indicates, however, that this principle of contract law has one major exception: where the injured party has performed all of his contractual duties and the only performance due by the breaching party is a definite money payment, the injured party is not entitled to rescission and restitution.[19] This rule is consistent with the general tenet that, although a court often orders equitable rescission as a remedy where it must "unmake a contract induced by mistake, fraud, or duress,"[20] it usually prefers monetary compensation as a remedy for breach of contract.[21] CRC is not entitled to equitable rescission on a failure of consideration theory as a matter of law and, for this reason, the superior court correctly denied CRC's motion for summary judgment.

### 2. It was error to grant summary judgment on the issue of breach of fiduciary duty.

 At the time it denied CRC's motion for summary judgment, the superior court sua sponte granted summary judgment to the Hobbses on the broader question whether equitable rescission could be an appropriate remedy in the case under any theory. In doing so, the superior court decided CRC's second claim for equitable rescission, which was based on a theory of breach of fiduciary duty. CRC's second amended complaint included allegations that Cucullu and Tiplady "under duress were offered . . . to have their interest in HIAK purchased" and that the Hobbses breached their fiduciary duties. The complaint further alleged that the buy-

out agreement was unenforceable "because of coercion in the inducement" and "concealment of pertinent facts as to the company assets and the dealings of the company."

After the superior court granted summary judgment to the Hobbses, CRC filed a motion for reconsideration arguing that factual questions remained as to whether the buyout agreement was based on full disclosure of relevant information and executed in good faith.[22] CRC pointed to evidence and documents filed in support of its motion, including testimony from both Cucullu and Tiplady that "significant relevant information was withheld from their use throughout their stock ownership in HIAK," including at the time of the buyout agreement. CRC noted that "the court has received the transcribed testimony of Randy Hobbs admitting to bad faith conduct involving the sale of assets" offered to secure the buyout agreement "without returning any of the monies from such sale to the minority shareholders." For these reasons, CRC argued that the superior court's sua sponte decision to grant summary judgment in favor of the Hobbses was improper. The superior court denied CRC's motion with a brief explanation that did not address the breach of fiduciary duty claim itself.[23]

On appeal, CRC renews its complaint that the superior court erred by granting summary judgment to the Hobbses without ever addressing the breach of fiduciary duty claim. CRC maintains that the evidence it presented to the superior court "raises a

---

of their tuition) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 372, 373 (1981) and 5 CORBIN, *supra* note 15, § 1104, at 562); *Estate of Lampert Through Thurston*, 896 P.2d at 219–20 (holding that the wife's failure to provide the husband with a life estate in the couple's residence through her will, as required by the couple's estate-planning agreement, entitled the husband to a rescission of the agreement).

**19.** RESTATEMENT (SECOND) OF CONTRACTS § 373 (1981).

**20.** *Kazan v. Dough Boys, Inc.*, 201 P.3d 508, 515 n. 21 (Alaska 2009); *see also McKeown v. Kinney Shoe Corp.*, 820 P.2d 1068, 1071 (Alaska 1991).

**21.** RESTATEMENT (SECOND) OF CONTRACTS ch. 16 note (1981) ("The traditional goal of the law of contract remedies has not been compulsion of the

promisor to perform his promise but compensation of the promisee for the loss resulting from breach."); *see also Knaebel v. Heiner*, 663 P.2d 551, 553 (Alaska 1983) (stating that a party "who seeks the interposition of equity must generally show that he either has no remedy at law or that no legal remedy is adequate").

**22.** CRC further argued that if the Hobbses owed a fiduciary duty to Cucullu and Tiplady, they bear the burden of proving that they acted in good faith, that the transaction was fair, and that the transaction was based on full disclosure of relevant information.

**23.** The superior court stated only that "[t]he dispute does not involve the burden of proof issues raised in a minority/majority stockholder conflict. It is a sales contract. The remedy of damages is adequate."

question of fact concerning whether the Hobbs Industries defendants have acted in good faith [or] in breach of their fiduciary duty." The Hobbses respond that any "claims of non-disclosure ... were released in the 1996 settlement agreement" and cannot be a basis for rescission of that agreement. The Hobbses also argue that CRC's sale of assets claim is "not for breach of fiduciary duty" because after the buyout agreement was signed, "the Hobbs[es] were no longer in a fiduciary relationship with" Cucullu and Tiplady.

■ CRC's initial motion for summary judgment, the Hobbses' opposition, and CRC's reply did not focus on CRC's breach of fiduciary duty claim. Instead, the parties primarily briefed and argued the question of failure of consideration. But CRC's motion for summary judgment also based its claim for rescission of the agreement on a breach of fiduciary duty, specifically alleging that the Hobbses "never had any intent to fulfill" the buyout agreement and that "[t]heir sole aim was to obtain the outstanding shares to control the corporation as they saw fit without providing any remuneration" to Cucullu or Tiplady. The superior court failed to address the merits of either party's arguments regarding the breach of fiduciary duty claim.[24] We have held that shareholders in a closely held corporation are fiduciaries to one another.[25] Where a fiduciary induces a contract by unfair persuasion, he or she breaches this fiduciary duty, and under some circumstances, that contract is voidable by the victim of the breach.[26] Because the superior court failed to consider the question whether CRC was entitled to equitable rescission based on its claim of breach of fiduciary duty, we remand for consideration of that issue.

**B. The Superior Court Did Not Err in Using the Figures Provided in the Buyout Agreement for the Valuation of HIAK.**

■ The 1996 buyout agreement required the Hobbses to "automatically increase the cash buy back price to [Cucullu] and [Tiplady] if by independent appraisal it is demonstrated that their respective share of the liquidated value of the [c]orporation is higher...." At trial, CRC presented testimony from Stephen Sheaffer, a CPA hired by CRC during litigation to conduct an appraisal of HIAK as of September 25, 1996, the date of the buyout agreement.

The superior court found that there was no term in the agreement "regarding who had the obligation or the duty to perform the independent appraisal" and that "any of the parties could have demanded that an independent appraisal be done" but that "nobody did on a timely basis." While acknowledging the business valuation later performed by Sheaffer, the superior court found that because the valuation was not timely and was not an independent appraisal of liquidation value as contemplated by the buyout agreement, the Hobbses were liable to CRC for the amount specified in the buyout agreement: $40,000 to Cucullu and $24,000 to Tiplady, plus prejudgment interest.

**1. The superior court did not err in declining to shift the burden of proof for the valuation of HIAK to the Hobbses.**

■ Some records relevant to the liquidation value of HIAK were available in the mid–1990s when HIAK's books, records, and finances were examined as part of a bankruptcy proceeding but were not available when, "late in the case," CRC sought to compel discovery of them. As the superior court found, those records were destroyed "sometime between the dismissal of the bankruptcy and 1997." Austin Hobbs testified that he ordered the destruction of the records after HIAK had finished its bankruptcy proceeding and the parties had signed their buyout agreement because the federal

---

24. Although the superior court did mention the Hobbses' sale of secured assets in its order, it did not address CRC's argument that the sale of secured assets was evidence of a breach of fiduciary duty in the formation of the agreement.

25. *Collins v. Blair*, 68 P.3d 1222, 1230 (Alaska 2002) (citing *Alaska Plastics, Inc. v. Coppock*, 621 P.2d 270, 276 (Alaska 1980)).

26. *See* Restatement (Second) of Contracts § 177 (1981).

government refused to pay for continued storage of the documents and Hobbs "didn't think there'd be any reason to keep all that old stuff."

At trial, CRC requested that the court apply a spoliation of evidence theory to shift to the Hobbses the burden of proof on the question of the liquidation value of the business as of September 25, 1996, the date of the buyout agreement. CRC argues that "regardless of the reason that the records were destroyed and whether it was reasonable to do so[,] . . . as a matter of public policy, the burden of proof needs to be on the party who destroyed the records, because the other party is totally innocent and is the one harmed." For that reason, and because the records at issue in this case were destroyed at Austin Hobbs's direction, CRC argues that "the burden of proof should have been shifted to [the Hobbses]."

The superior court found that, under the buyout agreement, "either of the parties or any of the parties could have demanded that an independent appraisal be done." The superior court also found, however, that none of the parties requested an independent appraisal "on a timely basis." Cucullu and Tiplady "both testified they did not request or demand an independent appraisal." CRC did not even request discovery of the records relevant to an independent appraisal of HIAK's liquidation value until years after purchasing Cucullu's and Tiplady's putative shares.

▇▇▇ Because the 1996 buyout agreement did not provide a deadline by which any party desiring an independent appraisal had to request such an appraisal, what constitutes a reasonable length of time for performance of that contract provision is a question of fact for the superior court.[27] The superior court found that no party timely requested an independent appraisal or the corporate records needed for such an appraisal, and the evidence supports that finding.

The superior court properly found that no party requested an independent appraisal of the corporation's liquidation value within a reasonable length of time and that no party timely signaled any need to view corporate records pertinent to an appraisal of its liquidation value. Therefore, we conclude that the superior court also properly declined to shift the burden of proof to the Hobbses on the question of the liquidation value of the corporation.

## 2. The superior court did not err in declining to treat CRC's business valuation as an independent appraisal.

▇▇▇ The buyout agreement provided an increase in the buyout price for Cucullu and Tiplady "if by independent appraisal it is demonstrated that their respective share of the liquidated value of the [c]orporation is higher" than the agreed-upon amount. CRC presented the testimony of Stephen Sheaffer—a CPA who, during the course of litigation, conducted a business valuation of HIAK as of the September 1996 buyout agreement—and claimed that his expert valuation for trial fulfilled the buyout agreement's contemplated "independent appraisal." Sheaffer valued HIAK at $2,286,000, an amount that included $2.8 million allegedly owed HIAK by Slana Energy, contractor for the Over the Horizon Backscatter project.

The superior court did not adopt Sheaffer's valuation of HIAK. It found that under the buyout agreement, any party "could have demanded that an independent appraisal be done, but nobody did it on a timely basis." The court determined that Sheaffer's valuation did not qualify as an independent appraisal under the buyout agreement: "[W]ith great respect [for Sheaffer], the [c]ourt is not persuaded that a litigation expert['s] business valuation preliminary estimate, as his report was titled, is an independent appraisal as contemplated by the September 1996 resolution." Furthermore, the superior court

---

27. *See Hall v. Add–Ventures, Ltd.*, 695 P.2d 1081, 1089 (Alaska 1985):

> Where no [contract] provision is made as to time of performance, a reasonable time is implied, to be determined upon consideration of

the subject matter of the contract, what was contemplated at the time the cont[r]act was made, and other surrounding circumstances. Ordinarily, what constitutes a reasonable time is a question of fact for the trial court.

found that HIAK had no additional assets that would have changed the valuation of HIAK so as to affect the buyout agreement amounts.[28] As the superior court concluded, "because no independent appraisal was timely done, [CRC's] right and remedies under the September 1996 agreement is that their $400–a–share buyout at 5 percent interest is what they're entitled to."

CRC maintains that the per share values described in the buyout agreement should not have been applied automatically and argues that since Sheaffer's valuation "was the only business valuation available, and because it was independent, the [superior] court should have recognized it as the independent appraisal contemplated" by the buyout agreement.

We review the superior court's factual findings under a clearly erroneous standard, and the evidence supports the court's findings. It does not appear from the record before us that an independent appraisal of HIAK was ever performed or that HIAK had additional assets that would have altered its valuation and the amounts due under the buyout agreement. For these reasons, the superior court did not clearly err in relying on the specific monetary values provided in the 1996 buyout agreement.

## V. CONCLUSION

For the reasons explained above, we AFFIRM in part, REVERSE in part, and REMAND to the superior court for further proceedings on CRC's claim for equitable rescission on a breach of fiduciary duty theory.

CARPENETI, Justice, not participating.

---

28. Specifically, the superior court did not accept CRC's valuation of HIAK that included $2.8 million receivable from Slana Energy, a figure that the court found was unreasonable, uncollectible, and tied to an account that, by the time of trial, was fourteen years overdue.