Jeffrey J. KNAEBEL, Appellant,

v.

Lawrence E. HEINER, E.R. Chipp, Resource Associates of Alaska, Inc., John Doe I, and John Doe II, Appellees.

RESOURCE ASSOCIATES OF ALASKA, INC., Appellant,

v.

Jeffrey J. KNAEBEL, Appellee.

Nos. 6232, 6559.

Supreme Court of Alaska.

May 13, 1983.

Allen McGrath, Mary Poteet, Graham & James, Anchorage, for appellant in No. 6232, and appellee in No. 6559.

Leroy Barker, Susan Mendenhall, Robertson, Monagle, Eastaugh & Bradley, John Strachan, Strachan, Kelly & Patterson, Anchorage, for appellees in No. 6232, and appellants in No. 6559.

Before BURKE, C.J., CONNOR, MATTHEWS and COMPTON,* JJ., and SOUTER, Superior Court Judge.

## OPINION

CONNOR, Justice.

This appeal is from a superior court judgment denying Jeffrey Knaebel rescission of a reorganization agreement between appellant, Knaebel, and appellees, Lawrence Heiner and E.R. Chipp.

In 1970, Knaebel and Heiner, both mining engineers, and Chipp, a geologist, founded Resource Associates of Alaska, Inc. (hereinafter referred to as "RAA"). RAA is a close corporation which conducts mineral explorations for itself and on behalf of clients. All three founders worked for the corporation in various capacities. From 1970 until April 1979, Knaebel was president and general manager of the corporation. Chipp, Heiner and Knaebel each owned approximately 30% of the corporation's outstanding stock.

By 1978, the corporation had offices in Fairbanks, Anchorage and Colorado. At that time RAA encountered numerous problems in Colorado where the business was expanding rapidly. Knaebel moved to Colorado to supervise the corporation's business there. This move resulted in increased tensions between the parties. In February 1979, Chipp offered to seel his interest in RAA for $250,000. Heiner proposed that he and Knaebel purchase Chipp's share of the corporation. Knaebel did not want to break up the relationship between these parties, and he refused Heiner's proposition. Reorganization discussions then began.

On March 2, 1979, Chipp and Heiner offered to buy Knaebel's interest for $250,000 but Knaebel refused. On March 3, 1979, the three parties met to discuss possible solutions to their problems. Chipp and Heiner expressed dissatisfaction with Knaebel's management. Knaebel offered to buy out enough of Chipp's and Heiner's shares

to give him a controlling interest in the corporation. Chipp and Heiner refused. On behalf of RAA, Heiner hired an accounting firm to advise the RAA shareholders concerning reorganization. Knaebel was assured by Chipp and Heiner that any information or advice furnished to one stockholder would be made available to all. On March 30, 1979, the three parties met again. Chipp and Heiner proposed that they split away from RAA and form another corporation using a Type D reorganization in order to minimize tax consequences. Knaebel refused the proposal. He subsequently counterproposed that he form the Type D corporation on the same terms that Chipp and Heiner had proposed for themselves. They refused. Negotiations continued with discussions of several other proposals and counterproposals.

On April 2, 1979, the parties finally agreed that Knaebel would form a Type D reorganization. The assets of RAA were divided pursuant to the agreement. Knaebel received cash and properties and contracted to serve as a consultant for $4,667 a month. In accordance with the terms of the agreement, Knaebel resigned as chief officer of the corporation. The three partners then began to draft the Type D reorganization plan. A dispute arose over the legality of the reorganization plan when tax counsel advised Knaebel that it contained many defects. The dispute was not resolved and Knaebel subsequently sought rescission of the reorganization agreement in the superior court.

Numerous issues are raised by both appellant and appellees. Of those, we address the following: (1) Did the superior court err by placing the burden of proof for breach of fiduciary duty upon Knaebel? (2) Is Knaebel entitled to seek equitable rescission?

## BURDEN OF PROOF

It is well established that majority stockholders are considered fiduciaries with respect to minority stockholders within the

* Souter, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

same corporation. *Wolff v. Arctic Bowl, Inc.,* 560 P.2d 758, 767 (Alaska 1977). This fiduciary duty encompasses the obligation to act in good faith, to enter into transactions that are fair, and to fully disclose material facts. *Alaska Plastics, Inc. v. Coppock,* 621 P.2d 270, 276 (Alaska 1980); *Schueler v. Blomstrand,* 394 Ill. 600, 69 N.E.2d 328, 333 (Ill.1946); *Donahue v. Rod Electrotype Co.,* 367 Mass. 578, 328 N.E.2d 505 (Mass.1975). Chipp and Heiner do not dispute that they, as majority shareholders, owed a fiduciary duty to Knaebel, the minority shareholder.

■ In *Alaska Plastics, Inc. v. Coppock,* 621 P.2d at 276, we expressly stated that in a close corporation the existence of a fiduciary duty between shareholders justifies shifting the burden onto the majority shareholders to show that their duty has not been breached. The superior court failed to adhere to the burden of proof allocation which we established in *Alaska Plastics.* Instead, the court focused upon the fact that Knaebel was seeking rescission and correspondingly placed the burden of proof upon him to show his entitlement to that remedy. The court erred when it failed to recognize that the fiduciary relationship between the parties necessitated a shift in the burden of proof from Knaebel to Chipp and Heiner. We hold that Knaebel was prejudiced by this error and we accordingly reverse the superior court judgment and remand. Upon remand, Chipp and Heiner must show that they acted in good faith, that the transaction was fair, and that it was based on a full disclosure of relevant information.

We additionally hold that on remand the defendants, appellees in File No. 6232, must sustain their burden of proof by clear and convincing evidence. *See Miller v. Sears,* 636 P.2d 1183, 1190 (Alaska 1981); *see also Pappas v. Moss,* 393 F.2d 865, 867 (3d Cir. 1968).

RIGHT TO RESCISSION

Appellees contend that Knaebel is not entitled to seek equitable rescission because: (1) Knaebel has an adequate remedy at law, (2) Knaebel seeks equity with "unclean hands," and (3) Knaebel did not, before seeking rescission, return to RAA the proceeds he received pursuant to the reorganization agreement.

We decline to adjudicate the merits of these defenses as the trial court is best qualified to make such determinations. *Multifoam Co. v. AAA Tire Stores, Inc.,* 507 P.2d 1112, 1113 (Colo.App.1973); *Cowan v. Chalamidas,* 98 N.M. 14, 644 P.2d 528, 529 (N.M.1982). However, because these issues arise frequently in the trial courts, we set forth the following general rules to provide guidance.

■ One who seeks the interposition of equity must generally show that he either has no remedy at law or that no legal remedy is adequate. *Coffman v. Breeze Corporations, Inc.,* 323 U.S. 316, 322, 65 S.Ct. 298, 301, 89 L.Ed. 264, 269–270 (1945). Knaebel does not dispute this fundamental tenet of equity jurisprudence, but maintains that he is entitled to seek equity because damages would inadequately compensate him for his lost financial interest in RAA.

Although "[t]here is no general formula for determining when a legal remedy is inadequate.... [T]here are some common patterns in the cases." D. Dobbs, *Handbook on the Law of Remedies* § 2.5, at 57 (1973). Dobbs mentions four types of cases in which damages may not provide an adequate remedy: (1) when the thing that plaintiff has been deprived of is unique and irreplaceable, (2) when a legal remedy would require that the plaintiff bring more than one lawsuit, (3) when the defendant is insolvent, and (4) when the amount of damages is highly speculative. *Id.*[1] The trial court shall decide on remand whether the facts of Knaebel's case indicate that damages would be an inadequate remedy.

---

1. We do not suggest that damages are an inadequate remedy in only these four types of cases. We simply offer these as examples of circumstances which render damages inadequate.

Next we address the appellees' contention that Knaebel is not entitled to seek rescission because he does so with "unclean hands."

■ The equitable maxim, "He who comes into equity must come with clean hands," has been interpreted as meaning that, "since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from plaintiffs." Chaffee, Some Problems of Equity 1 (1950). In order to successfully raise the defense of "unclean hands," the defendant must show: (1) that the plaintiff perpetrated some wrongdoing; and (2) that the wrongful act related to the action being litigated. *Id.* Although " 'equity does not demand that its suitors shall have led blameless lives,' as to other matters, it does require that they shall have acted fairly and without fraud or deceit *as to the controversy in issue." Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381, 1386 (1945) (citations omitted, emphasis added) *quoting Loughran v. Loughran,* 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219, 1226 (1934).

Appellees claim that Knaebel made an illegal loan to himself in early 1980. However, the accuracy of this allegation was not shown at trial. On remand, the trial court shall make all necessary findings regarding alleged wrongdoing by Knaebel. Absent such findings, appellees' allegation of unclean hands is untenable. If the trial court finds that Knaebel is guilty of wrongdoing, we then leave it to that court to further determine whether the wrongful act was so closely related to the matter in litigation (i.e., the reorganization agreement) as to affect the equitable relation of the parties to the suit. *See Hoehn v. Crews,* 144 F.2d 665, 672 (10th Cir.1944).

■ Finally we address the appellees' contention that Knaebel must return the proceeds he received pursuant to the reorganization agreement before he may seek equitable rescission.

Rescission *at law* is a suit based upon rescission already accomplished. At law the court has nothing to do with the rescission itself; it is only involved if a subsequent suit is brought by plaintiff to recover what he gave to defendant pursuant to the rescinded transaction. D. Dobbs, *supra,* § 4.8, at 292–93.

■ "Restoration or tender [of the benefits received under the transaction being rescinded] before suit is a necessary element in legal rescission, but is wholly superfluous as a prerequisite to the commencement of a suit in equity for rescission or cancellation." *Lightner v. Karnatz,* 258 Mich. 74, 241 N.W. 841, 842 (Mich.1932). *See also DeBlouw v. Ramm & Co.,* 284 Mich. 589, 279 N.W. 919, 922 (Mich.1938).

Equitable rescission differs from rescission at law in that it is not conditioned upon restoration of benefits, nor does it require an offer of restoration. *Lightner v. Karnatz,* 241 N.W. at 842.

"Since rescission is not accomplished 'in equity' until the court so decrees, *the plaintiff has no obligation before suit to make restitution* of goods or money he received from the defendant. . . . [Since the court has the] capacity to protect the defendant by its decree and to condition rescission upon full restoration.

This does not mean that the plaintiff is entitled to get back what he gave and keep what he got, too. It means only that *he need not make formal tender before suit."*

D. Dobbs, *supra,* § 4.8, at 294 (emphasis added).

Because Knaebel seeks equitable rescission rather than legal rescission, we hold, as a matter of law, that neither restoration nor tender is required by Knaebel before suit.

Since we reverse and remand the superior court judgment, we do not reach the costs questions raised by Chipp and Heiner in the separate appeal (No. 6559) currently pending before us. As we stated in *Mitchell v. Land,* 355 P.2d 682, 688 (Alaska 1960):

"Since the judgment of the trial court must be reversed and the case remanded for further proceedings, there is no need at this time to determine whether the lower court lost jurisdiction in the matter of assessing costs because of the appeal. We apply here the general rule that where reversals are ordered and the cause is remanded for a new trial the allowance of costs incurred in the lower court must await the result of the trial which will eventually settle the controversy." (footnote omitted).

REVERSED and REMANDED.

RABINOWITZ, J., not participating.