*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KEVEN WINDEL and MARLENE WINDEL, | ) ) ) | Supreme Court Nos. S-13793/S-14015 (Consolidated) |

KEVEN WINDEL and                                    )    Supreme Court Nos. S-13793/S-14015
MARLENE WINDEL,                                 )    (Consolidated)
                                                )
                    Appellants,                 )    Superior Court No. 3PA-08-02417 CI
                                                )
        v.                                      )
                                                )
                                                )    O P I N I O N
MAT-SU TITLE INSURANCE                          )
AGENCY, INC. and SECURITY UNION )    No. 6795 - July 12, 2013
TITLE INSURANCE COMPANY,                         )
                                                )
                    Appellees.                  )
                                                )
_____ )
                                                )
KEVEN WINDEL and                                )    Superior Court No. 3PA-05-01317 CI
MARLENE WINDEL,                                 )
                                                )
                    Appellants,                 )
                                                )
        v.                                      )
                                                )
THOMAS CARNAHAN,                                )
                                                )
                    Appellee.                   )
                                                )
_____ )

Appeal in File No. S-13793 from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge. Appeal in File No. S-14015 from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Keven Windel and Marlene Windel, pro se, Wasilla, Appellants (No. S-13793). Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellants (No. S-14015). David A. Devine, Groh Eggers, LLC, Anchorage, for Appellee Mat-Su Title Insurance Agency, Inc. James M. Gorski, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellee Security Union Title Insurance Company. Chris D. Gronning, Bankston Gronning O'Hara, P.C., Anchorage, for Appellee Thomas Carnahan.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices. [Christen, Justice, not participating.]

WINFREE, Justice.

## I.      INTRODUCTION

The primary issue in this consolidated appeal is the validity and interpretation of a roadway easement granted to meet a borough's subdivision plat-waiver requirements. The borough later approved a nearby subdivision project contingent on upgrading the easement roadway. The owners of the servient estate first insisted that the developer maintain his roadway upgrade within the original 50-foot easement. After the work was completed the owners sued the developer for trespass, alleging implicitly that the original easement grant was invalid because it was not properly executed and acknowledged, and asserting that there might be at most an approximately 14-foot wide public prescriptive easement across their property. The developer argued that the recorded documents created a valid 50-foot public easement.

The superior court granted summary judgment in favor of the developer on the validity of the 50-foot easement, holding that any acknowledgment deficiencies were

cured under AS 34.25.010.[1] We agree with the landowners that the superior court misapplied the statute here, but we affirm the grant of summary judgment on other grounds. In light of this conclusion, we also affirm other relevant superior court rulings with one exception — we remand to the superior court for renewed consideration of its attorney's fees rulings in the litigation between the landowners and the developer.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Background

Keven and Marlene Windel own property near Wasilla, consisting of three contiguous parcels (W1, W2, and W3) obtained in three separate transactions. The three parcels originally were part of a larger 160-acre tract owned by spouses Robert and Evelyn Davis as tenants by the entirety. Davis Road crosses W1 and W2.

The Windels purchased W1 directly from the Davises in 1986. The Windels were informed that the parcel was encumbered by a 50-foot wide public easement for Davis Road. The Windels purchased W2 and W3 in 1987 and 1998, respectively, from the Davises' successors in interest. These parcels are west of W1. When purchased by the Windels, W2 was encumbered by a 50-foot wide public easement for Davis Road firmly established by the Davises' successors-in-interest.

In 1996 Thomas Carnahan purchased property west of the Windel properties. The Carnahan and Windel properties are not adjacent — another parcel lies between them. Davis Road crosses W1, W2, and the intermediate parcel to provide access to the Carnahan property.

---

[1] AS 34.25.010 provides that a "defective and informal acknowledgment" of an instrument for the conveyance of a real property interest "is validated and declared sufficient in law" if certain conditions are met.

In May 2004 Carnahan applied to subdivide his property. The Matanuska-Susitna Borough voted to approve Carnahan's application subject to certain conditions, including upgrading Davis Road. Carnahan discussed with the Windels possibly straightening Davis Road curves located on their property. The Windels refused, insisting that the road upgrade stay within the original 50-foot wide easement area. Carnahan upgraded Davis Road, but before Carnahan obtained final approval of his subdivision application the Windels learned that the original Davis Road easement over W1 — the parcel they purchased directly from the Davises — arguably was invalid.

**2.    The W1 Davis Road easement**

In late 1974 the Davises applied for a Borough plat waiver to subdivide 80 acres into four 20-acre parcels, including W1. Both Davises were listed as owners of record and both signed the application form. They stated that all four parcels would be accessible to a public road system by way of Davis Road.

As part of the Davises' plat waiver application, Mr. Davis executed and recorded a form easement "for the benefit of all owners of property adjacent to said right of way hereinafter described, and to the public generally without limitation." Mr. Davis described the easement as running "[o]ver [the] existing road" — Davis Road — and granted it to "the owners of property adjacent to and adjoining said below-described right of way, and to the public in general, for unlimited public use." Mr. Davis did not expressly state the roadway easement width in this document, and it was not executed by Mrs. Davis.

The Borough sent Mr. Davis a letter informing him that regulations required a 50-foot wide right of way for the easement. The form easement was re-recorded two weeks later with three handwritten changes: (1) "A 50 FT EASEMENT" was written above "Over [the] existing road"; (2) the initials "R.F.D." were written next to the interlineation; and (3) the phrase "Rerecorded to show easement footage" was written

across the bottom of the first page. The document was stamped to show it was re-recorded as requested by "R.F. Davis." The Borough platting board met later that day, noted the re-recorded easement, and approved the plat waiver.

The next day the Borough sent a letter notifying the Davises of the plat waiver approval. This notice contained the entire plat waiver application file, including the changes made to the application during the review process, the platting board meeting minutes discussing the easement, the re-recorded easement, and the notice requiring the 50-foot wide easement.

### 3. The Windels' purchase of W1 from the Davises

In 1986 the Davises sold W1 to the Windels. The Windels contracted for title insurance with Mat-Su Title Insurance Company which in turn obtained a policy from Security Union Title Insurance Company. Both the preliminary commitment to extend title insurance and the title insurance policy noted a 50-foot wide public use easement across the parcel as "recorded . . . and re-recorded." Mat-Su Title had annotated its copy of the 1974 recorded easement with handwriting in the margins, adding "SEE CORRECTION DEED — BK 92 PG 753. A 50' EASEMENT." Mat-Su Title did not annotate or otherwise mark its copy of the re-recorded easement. The title companies' copies of both the December 1974 and January 1975 recordings were provided to the Windels with the final title policy.

### B. Proceedings

### 1. The Carnahan litigation

In June 2005 the Windels filed suit against Carnahan, alleging trespass to land, foliage, and chattels of W1 and requesting declaratory judgment regarding the width and nature of the Davis Road easement across the parcel. The Windels alleged that the Davis Road easement was publicly dedicated at a 50-foot width only where it touched and ran across W2. The Windels alleged that if there were a W1 easement, then

"[a]t most, the public may have a prescriptive easement 14 feet in width." Carnahan answered, asserting counterclaims seeking validation of the 50-foot public easement across W1 under a variety of theories, and requesting attorney's fees.

Carnahan gave the Windels an Alaska Civil Rule 68 offer of judgment containing four provisions: (1) judgment that the 50-foot wide Davis Road easement over W1 was valid; (2) judgment for the Windels for $10,000 on all of their damages claims; (3) judgment for the Windels for attorney's fees and costs; and (4) dismissal of Carnahan's counterclaims. The Windels did not accept this offer of judgment.

Carnahan subsequently amended his answer and raised an additional counterclaim, asserting that the Windels had interfered with his access over Davis Road and seeking damages in excess of $20,000.

Carnahan then moved for summary judgment to establish the Davis Road easement's validity and 50-foot width over W1. Superior Court Judge Vanessa White granted summary judgment in Carnahan's favor on that issue.

### 2. The title insurance litigation

A year after Judge White's summary judgment ruling in the Carnahan litigation, the Windels, proceeding pro se, filed a separate action against Mat-Su Title and Security Union Title, asserting that the title companies were liable for the Windels' inability to invalidate the W1 Davis Road easement. The Windels claimed the title companies committed fraud or intentional or negligent misrepresentation by adding handwritten annotations to the copy of the 1974 easement provided with their title policy. The Windels also advanced a professional negligence theory, claiming the title companies owed them a duty not only to disclose the easement, but also to evaluate its potential invalidity. The Windels claimed breach of contract for failure of both asserted duties.

Security Union Title moved for summary judgment on all counts, arguing that: (1) the Windels enjoyed fee simple title, which was all the title insurance policy covered; (2) Security Union Title effectively notified the Windels of the easement's existence; and (3) the easement was expressly excluded from coverage, negating liability. Mat-Su Title joined in the motion, adding that the easement's validity as a matter of law negated the Windels' claims.

The Windels responded that title insurers owe legal duties beyond the scope of their insurance policies, and that whether the annotations to the 1974 recorded document were fraudulent or misrepresentations was a question of fact. The Windels also moved for partial summary judgment on whether Mat-Su Title's annotations to its copy of the 1974 easement constituted misrepresentation, fraud, or professional malpractice, and on whether Mat-Su Title and Security Union Title owed a duty to assess the easement's legal validity. Mat-Su Title and Security Union Title then directed the court to Judge White's order validating the easement in the Windels' action against Carnahan.

In January 2010 Superior Court Judge Eric Smith granted summary judgment in favor of Mat-Su Title and Security Union Title and denied the Windels' cross-motion for partial summary judgment. Judge Smith ruled that the title companies' only applicable duty was reporting the easement's existence, not assessing its legal validity, and that the title companies had fulfilled this duty. Judge Smith ruled alternatively that Mat-Su Title and Security Union Title had the right to conspicuously exclude the easement from coverage, discharging any potential liability. Judge Smith also ruled that the Windels' fraud and misrepresentation claims failed because the handwritten annotation "did not misrepresent the facts but rather clearly indicated . . . a first recording that was modified." Finally, Judge Smith ruled that because the Windels'

professional negligence and fraud theories failed, they could not sustain a breach of contract claim.

Judge Smith entered final judgment in favor of the title insurance companies in February 2010.

### 3.    Further proceedings in the Carnahan litigation

In early 2009, while the Windels still were pursuing their claims against Mat-Su Title and Security Union Title, the Windels raised a nuisance claim against Carnahan, contending that his road improvements had caused ponding on their property during the 2007 spring breakup.  The parties filed a partial settlement agreement addressing all of their previous damages claims — dismissing without prejudice the Windels' damages claims mooted by Judge White's summary judgment ruling and dismissing with prejudice both the Windels' and Carnahan's damages claims surviving the summary judgment ruling.  The settlement agreement also addressed the nuisance claim, requiring that the parties hire an independent engineer to determine whether the road improvements had caused or exacerbated ponding and to make recommendations to eliminate the ponding.  The agreement provided that if the parties did not agree with the engineer's determinations and recommendations, they could present the dispute to Judge White for an abbreviated evidentiary hearing and equitable abatement proceeding.

Judge White held a two-day hearing on the equitable nuisance abatement claim in December 2009.  The independent engineer testified that there was naturally occurring ponding on the Windels' property due to its flat topography and low elevation, but that Carnahan had exacerbated the ponding in 2007 by elevating Davis Road.  In late 2007 Carnahan had installed a culvert to alleviate ponding, but the independent engineer recommended installing an additional culvert.  A second engineer testified about his property inspection and recommended two additional culverts and swales for erosion

control at the culvert outlets. A third engineer testified that adding a second culvert, as the independent engineer had suggested, would resolve the ponding problem.

Judge White found that although Carnahan's road improvements did not cause the ponding, they exacerbated it. Judge White found that a nuisance existed in 2007, but that after Carnahan installed the first culvert in 2007 there was no ponding during either the 2008 or 2009 spring breakups. Judge White recognized this alone was not sufficient to demonstrate that the first culvert completely abated the nuisance, and ordered Carnahan to install a second culvert. Judge White also ordered Carnahan to install either a "T ditch" or a swale at the culvert outlets. Finally, Judge White ordered that if there were significant ponding during the 2010 spring breakup, Carnahan would be responsible for draining the area. Judge White declined to impose responsibility on Carnahan for future maintenance of Davis Road and the culverts.

Judge White entered final judgment in favor of Carnahan in June 2010.

### 4. The appeals

In the title insurance litigation, the Windels appealed each of Judge Smith's rulings on the cross-motions for summary judgment. When asked at oral argument whether their claims against Mat-Su Title and Security Union Title must fail if Judge White had correctly validated the 50-foot wide Davis Road easement accross W1, the Windels did not articulate any reasons to the contrary. We stayed that appeal pending consideration of the appeal in the Carnahan litigation, and consolidated the appeals for decision.

In the Carnahan litigation, the Windels appealed Judge White's rulings that the easement over W1 was valid, that Carnahan was not responsible for continued roadway maintenance, and that Carnahan was the prevailing party entitled to an attorney's fee award.

## III.  STANDARD OF REVIEW

"We review a grant of summary judgment de novo, determining whether issues of material fact exist and whether the moving party is entitled to judgment as a matter of law."[2]  "We may affirm a superior court's grant of summary judgment on any grounds that the record supports, even grounds not relied on by the superior court."[3]

## IV.  DISCUSSION

### A.  The 50-Foot Wide Davis Road Easement Over W1 Is Valid.

In granting summary judgment, Judge White explained that the 50-foot wide Davis Road easement over W1 was validated under AS 34.25.010,[4] and alternatively was supported under the theories of ratification, quasi-estoppel, or laches. The Windels' primary argument that Judge White incorrectly granted summary judgment declaring the easement across W1 valid is twofold.  First, they argue that the easement is invalid because Mr. Davis's signature on the second recording was never acknowledged.  Second, they argue that the easement is invalid because it was never executed by Mrs. Davis.

---

[2]   *Handle Constr. Co. v. Norcon, Inc.*, 264 P.3d 367, 370 (Alaska 2011) (citing *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 581 (Alaska 2007)).

[3]   *Winterrowd v. State, Dep't of Admin., Div. Of Motor Vehicles*, 288 P.3d 446, 449 (Alaska 2012) (quoting *Van Sickle v. McGraw*, 134 P.3d 388, 341 n.10 (Alaska 2006)).

[4]   AS 34.25.010 provides that a "defective and informal acknowledgment" of an instrument for the conveyance of a real property interest "is validated and declared sufficient in law" if it was made in good faith and no suit to set aside, alter, change, or reform the instrument has been filed in the property's judicial district within 10 years.

### 1. The original easement was properly acknowledged and can only be interpreted to be 50-feet wide.

The Windels assert that Judge White erred in applying AS 34.25.010 to cure a defect in the re-recorded Davis Road easement, arguing that the re-recorded document stating the easement's width was unacknowledged, rather than defectively acknowledged, and therefore beyond the curative scope of AS 34.25.010. We agree with the Windels that AS 34.25.010 does not cure the unacknowledged interlineation and re-recording. But Mr. Davis's original easement was both acknowledged and, as discussed in the next section, ratified by Mrs. Davis, and the only possible interpretation of the valid easement's intended width is 50 feet.

An acknowledgment is a means of authenticating an instrument by showing it was the act of the person executing it.[5] Black's Law Dictionary defines "acknowledgment" as "[a] formal declaration made in the presence of an authorized officer, such as a notary public, by someone who signs a document and confirms that the signature is authentic."[6] When Mr. Davis re-recorded the easement he included the width and initialed his changes, but there was no new acknowledgment. The Windels

---

[5] *See* AS 09.63.090.

[6] BLACK'S LAW DICTIONARY 25 (9th ed. 2009). AS 09.63.080 provides:

The form of a certificate of acknowledgment . . . shall be accepted in the state if

> (1) the certificate is in a form prescribed by the laws or regulations of the state;

> (2) the certificate is in a form prescribed by the laws or regulations applicable in the place in which the acknowledgment is taken; or

> (3) the certificate contains the words "acknowledged before me" or their substantial equivalent.

are correct that Mr. Davis's re-recording of the easement was unacknowledged, not defectively acknowledged, and therefore was ineffective by itself to grant a 50-foot wide easement over Davis Road. But that does not end the inquiry.

There is no dispute that Mr. Davis's original execution of an easement "over the existing road" across W1 was properly acknowledged and the document was properly recorded. Interpretation of an instrument granting an easement is a question of law, and when interpreting an instrument granting an easement, "we attempt to give effect to the intentions of the parties using a three-step analysis."[7] First, we analyze the document and determine if it is ambiguous as to the parties' intent.[8] Second, if the instrument is ambiguous we then evaluate extrinsic evidence.[9] Third, if extrinsic evidence does not reveal the parties' intent, we resort to rules of construction.[10]

The Windels' lawsuit raises the question of what Mr. Davis intended. The easement instrument is ambiguous, granting an easement "over the existing road" without providing the easement's width. We therefore consider extrinsic evidence.

Carnahan submitted affidavits demonstrating the history of Mr. Davis's recorded documents. Carolyn Garrett, the Borough planning technician who worked with the Davis Road easement in 1974 and 1975, discussed the documents in the plat waiver file. Based on the documents, the handwriting, and the office's practices at the time, Garrett stated:

---

[7]     *See Dias v. State, Dep't of Transp. & Pub. Facilities*, 240 P.3d 272, 274 (Alaska 2010) ("Whether a deed is ambiguous is a question of law subject to de novo review." (citing *Estate of Smith v. Spinelli*, 216 P.3d 524, 529 (Alaska 2009))).

[8]     *Id.*

[9]     *Id.*

[10]     *Id.*

[A] copy of the initially recorded Easement (which did not have a road width) was made, on which [Garrett] hand wrote the phrase "A 50 ft. easement" at the beginning of the legal description on the first page, and wrote the phrase "ReRecorded to show 50' easement" near the bottom of the page (to serve as a sample of what [Mr. Davis] could do). It appears that Mr. Davis then took the original Easement document to the District Recorders Office, wrote on it the phrase "A 50 ft. easement" at the same place just before the legal description, initialed that change with "RFD," and also added the phrase "ReRecorded to show easement footage" at the bottom of the page . . . . He then re-recorded his original Easement, with his handwritten changes, and obtained a conformed copy stamp of the recording information on the sample copy upon which [Garrett] had written.

This interpretation is consistent with the plat waiver file and corroborated by Marilyn McGuire, employed in the Borough planning department since 1975, based on her review of the file. State Recorder Vicky Backus explained that in the District Recorder's Offices in Alaska during the 1970s it was "a common occurrence for customers to bring in previously recorded documents that have had changes made to them, and re-record them."

The indisputable evidence is that the Davises were seeking a Borough subdivision plat waiver. The plat waiver requirements included a 50-foot wide road easement, and the only reasonable inference from the history of Mr. Davis's interactions with the Borough and his recordings is that he was attempting to comply with the Borough's 50-foot width requirement when creating the easement over W1. Interpreting the easement as 50-feet wide would be consistent with then-existing Borough requirements, but interpreting the easement as any lesser width would effectively invalidate the plat waiver. The Windels provided no extrinsic evidence suggesting that Mr. Davis did not intend to grant a 50-foot wide easement. We conclude that the only

reasonable interpretation of the original and properly acknowledged Davis Road easement is that it is 50-feet wide as it crosses W1.

> **2.     The absence of Mrs. Davis's signature on the Davis Road easement was cured by ratification.**

We agree with the Windels that applying AS 34.25.010 to cure the absence of Mrs. Davis's signature on both the original easement and the re-recording was error. Absence of a signature is not a defect in acknowledgment within the scope of AS 34.25.010.   But we agree with Judge White that the absence of Mrs. Davis's signature on the easement is nonetheless cured in equity.

Alaska recognizes the common law doctrine of ratification — "an agency doctrine . . . where, after a transaction is entered into by a second party purporting to act for a principal, the principal manifests an intent to be bound by the acts of the second party."[11]   A principal may ratify the second party's acts either expressly or by silence; this appeal raises the question whether Mrs. Davis ratified the 1974 easement by her silence.   Two requirements must be met before concluding that Mrs. Davis ratified the 1974 easement by silence.   First, "the act sought to be ratified . . . must be done by someone who held [him or herself] out to the third party as an agent for the principal."[12] Second, "the principal must then have failed to act in response under circumstances which 'according to the ordinary experience and habits of [people], one would naturally be expected to speak if [the principal] did not consent.' "[13]   "While normally such acquiescence is a question of fact, silence of the principal effects ratification as a matter

---

[11]     *S & B Mining Co. v. N. Commercial Co.*, 813 P.2d 264, 267 (Alaska 1991) (omission in original) (quoting *Sea Lion Corp. v. Air Logistics of Alaska Inc.*, 787 P.2d 109, 116-17 (Alaska 1990)).

[12]     *Id.* (omission in original) (quoting *Sea Lion Corp.*, 787 P.2d at 116-17).

[13]     *Id.* (quoting *Sea Lion Corp.*, 787 P.2d at 116-17).

of law if the case is so clear that reasonable [people] could come to but one conclusion."[14]

Here the Windels argue the first factor is not met because no evidence in the record supports a finding that Mr. Davis held himself out to third parties as Mrs. Davis's agent and the second factor is not met because no evidence in the record supports a finding that Mrs. Davis knew of the easement. We disagree.

The Davises, who owned the property as tenants by the entirety, jointly applied for the Borough subdivision plat waiver and both signed the application. Borough platting authorities did not formally address all of the subdivision waiver notices to both Davises, but the record reflects that Mrs. Davis was aware of the easement. For example, the Borough sent a notice addressed to both Davises advising them of the plat waiver approval and enclosing a complete copy of their application, including the additions made during the review process referencing the easement being 50 feet, the minutes to a platting board meeting discussing the easement, a copy of the re-recorded easement, and a copy of the notice sent to Mr. Davis requiring the easement's re-recording. Mrs. Davis also later executed conveyances of other parcels burdened by the Davis Road easement. There is no evidence in the record suggesting she questioned or disavowed the Davis Road easement when executing these conveyances. We agree with Judge White that Mr. Davis's easement conveyance was a single step in the larger process of accomplishing the Davises' joint goal of obtaining a subdivision plat waiver, which Mrs. Davis ratified by her silence.

---

[14]    *Id.* (quoting *Sea Lion Corp.*, 787 P.2d at 118) (internal quotation marks omitted).

The Windels contend that Carnahan may not obtain this equitable relief because he has unclean hands.[15] To successfully raise an "unclean hands" defense, a party must demonstrate that: (1) the other party "perpetrated some wrongdoing"; and (2) "the wrongful act related to the action being litigated."[16] The second part requires that the wrongful act be "so closely related to the matter in litigation . . . as to affect the equitable relation of the parties to the suit."[17] We will not apply the doctrine "if the party asserting unclean hands fails to show harm resulting from the alleged wrongful conduct."[18] The Windels argue Carnahan had unclean hands based on two grounds, but neither satisfies the defense's requirements.

The Windels first argue Carnahan had unclean hands because he did not investigate whether there was a valid easement over Davis Road before purchasing his property or before commencing his subdivision application. The Windels rely on *Alaska Continental Bank v. Anchorage Commercial Land Associates*, in which we affirmed the superior court's unclean hands finding after a bank approved a loan application with "almost no investigation" into whether the loan or its intended use would violate the terms of the partnership obligated under the loan.[19] The Windels argue Carnahan is

---

[15]    *See Alaska Cont'l Bank v. Anchorage Commercial Land Assocs.*, 781 P.2d 562, 565 n.6 (Alaska 1989) ("A party seeking to invoke equitable principles must come before the court with clean hands." (citing *In re Project 5 Drilling Program–1980*, 30 B.R. 670, 674 (Bankr. W.D. Ok. 1983))).

[16]    *Cook v. Cook*, 249 P.3d 1070, 1082 (Alaska 2011) (quoting *Knaebel v. Heiner*, 663 P.2d 551, 554 (Alaska 1983)).

[17]    *Id.* (omission in original) (quoting *Knaebel*, 663 P.2d at 554).

[18]    *Id.* (citing 27A AM. JUR. 2D *Equity* § 105).

[19]    781 P.2d at 565 n.6 (rejecting bank's invocation of equitable estoppel to
(continued...)

-16-                                                    6795

analogous to the bank because he purchased his property without verifying access along the Davis Road easement and he did not talk to the Windels before submitting subdivision applications to the Borough.

But the Windels do not demonstrate how this is wrongdoing for purposes of their unclean hands defense. In *Alaska Continental Bank*, the bank's failure to fully investigate the loan application was not the sole factor affecting the unclean hands conclusion; we noted "substantial support" for the superior court's finding of willful ignorance on the bank's part, and the bank's "inadequate loan review [was] particularly egregious . . . because it was dealing with an 'insider.' "[20] The Windels present no evidence of wrongdoing on Carnahan's part.

The Windels also claim Carnahan has unclean hands because he improved the road without complying with an alleged 60-foot right of way requirement. This argument fails and does not meet the unclean hands test's second requirement that the wrongful act be related to the action being litigated. The record demonstrates the Borough never required a 60-foot wide right of way. And even if the Borough had required a 60-foot wide right of way as part of Carnahan's subdivision approval, the Windels do not demonstrate how that relates to the validity of the 50-foot wide Davis Road easement at issue here.

### 3. Conclusion

We affirm Judge White's decision that the Davis Road easement over W1 is a valid 50-foot easement because the original easement grant was properly executed, acknowledged, and recorded and can only be interpreted to be 50-feet wide; Mrs. Davis

---

[19] (...continued)
bind partnership to debt incurred by individual connected with bank without apparent or actual authority of partnership).

[20] *Id.*

ratified the easement; and the Windels have not demonstrated that Carnahan has unclean hands to preclude equitable relief.

**B.    The Easement's Validity Requires Affirming Judge Smith's Summary Judgment Ruling In The Title Insurance Case.**

Confirming the validity of the 50-foot wide Davis Road easement across W1 requires a conclusion that the Windels' suit against Mat-Su Title and Security Union Title fails. The Windels cannot maintain fraud and misrepresentation claims because the representation the title companies made — that the Windels' property was subject to a 50-foot wide roadway easement — was true,[21] and absent some other mistake the Windels cannot maintain their professional malpractice claim.[22] We therefore affirm Judge Smith's summary dismissal of the Windels' suit against Mat-Su Title and Security Union Title.

**C.    Judge White Did Not Err In Refusing To Hold Carnahan Responsible For Future Maintenance And Improvements To Davis Road.**

The Windels challenge Judge White's refusal to impose continuing responsibility on Carnahan for future maintenance of Davis Road and the two culverts. We see no error.

As Judge White noted, Carnahan's road improvements had exacerbated ponding on the Windels' property in 2007, constituting a nuisance. Carnahan installed a culvert after the initial ponding incident and there was no ponding on the property during either the 2008 or 2009 spring breakup. Judge White recognized this fact alone was insufficient to demonstrate by a preponderance of the evidence that the culvert had

---

[21]    *See Smith v. CSK Auto, Inc.*, 204 P.3d 1001,1008 (Alaska 2009) ("A misrepresentation is a statement that is not in accord with the facts.").

[22]    *See Belland v. O.K. Lumber Co.*, 797 P.2d 638, 640 (Alaska 1990) (explaining that professional malpractice claims require breach of a professional duty).

completely abated the nuisance, and she ordered Carnahan to install an additional culvert to abate any potential remaining nuisance. Judge White also ordered Carnahan to install either a "T ditch" or a swale at the culvert outlets. Finally, Judge White ordered that if the 2010 spring breakup resulted in significant ponding then Carnahan would be responsible for draining the area.

Judge White's decision aligned with the recommendations of the engineers who testified at the hearing. The Windels point to no other evidence demonstrating that the road improvements caused a continuing nuisance, and they do not argue that the remedy the superior court ordered was an insufficient resolution to the ponding problem. The Windels have presented no legal authority supporting their argument that Carnahan alone has a duty to maintain the Davis Road easement granted to "the owners of the property adjacent to and adjoining said . . . right of way, and to the public in general, for unlimited public use."[23] We therefore affirm Judge White's ruling on this issue.

## D.     Attorney's Fees Issues — Carnahan Litigation

### 1.     Additional background

After Judge White granted summary judgment in favor of Carnahan on the validity of the 50-foot Davis Road easement, the parties entered into a partial settlement agreement. They agreed that the Windels' claims for damages mooted by the summary judgment ruling would be dismissed without prejudice, and that any damages claims by either party that survived the summary judgment ruling would be dismissed with

---

[23]     Easement beneficiaries generally have the duty to "maintain the portions of the servient estate and the improvements used in the enjoyment of the servitude that are under the beneficiaries' control, to . . . prevent unreasonable interference with the enjoyment of the servient estate." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.13 (1994); *Prince v. Eastham*, 254 P.3d 1121, 1129-30 (Alaska 2011); *cf. Catalano v. Town of Windham*, 578 A.2d 858, 863 (N.H. 1990) (holding that town was responsible to maintain road that had become a public road after public use created an easement).

prejudice. They agreed that final judgment could be entered on the summary judgment ruling so an immediate appeal could be undertaken. As noted earlier, they also agreed on a procedure for resolving the Windels' equitable nuisance abatement claim.

The parties later amended their settlement agreement, agreeing to dismiss without prejudice any remaining claims not resolved in the summary judgment ruling as to Carnahan's legal and equitable theories supporting the 50-foot easement's validity. The amendment also eliminated the agreement for entry of a final judgment on the summary judgment ruling, and instead provided that the Windels would file a motion requesting an order either construing their current complaint to include their equitable nuisance abatement claim or allowing their complaint to be amended to add that claim. The amended settlement provided that Carnahan would oppose the motion to the extent it asked that the Windels' current complaint be construed to encompass the nuisance claim. Finally, the amendment provided a different framework for requesting entry of final judgment on the summary judgment ruling, contingent on the resolution of the nuisance abatement claim.

The Windels later sought an order construing their then-current complaint to include their equitable nuisance abatement claim, or, alternatively, allowing them to amend their complaint to include that claim. Carnahan agreed that the Windels could amend their complaint to add the claim, but argued that their current complaint could not be construed to encompass the claim. Carnahan contended that during the settlement agreement negotiations it became apparent the parties "were eventually going to have a major contest before the Court over prevailing party attorney's fees, and that whether or not a nuisance claim for abatement was part of the lawsuit could be a factor in the eventual attorney's fees award."

In October 2009 Judge White allowed the Windels to amend their complaint to add the equitable nuisance abatement claim. But Judge White expressly

stated that she was not "ruling on whether the existing complaint states a nuisance claim or seeks an abatement remedy." As discussed earlier, in accordance with the amended settlement agreement Judge White ultimately held an evidentiary hearing in December 2009 on the nuisance abatement claim, and in January 2010 issued findings of fact and conclusions of law.

Judge White entered final judgment in favor of Carnahan in June 2010. The final judgment upheld the validity of the 50-foot easement and set out the terms of Carnahan's nuisance remediation obligation. The final judgment also provided that Carnahan would recover costs and attorney's fees from the Windels, with the amounts left open.

Carnahan moved for attorney's fees, first arguing that he was entitled to Rule 68 attorney's fees because he had "beaten" his January 2006 Rule 68 offer of judgment.[24] He alternatively argued that he was entitled to Rule 82 attorney's fees if those fees would be greater than allowable Rule 68 fees or if the court determined that he was not entitled to Rule 68 fees.[25]

The Windels asked to delay the attorney's fees motion and moved: (1) to amend the final judgment to reflect that they were the prevailing party; (2) for reconsideration of the court's decision on the form of the judgment; and (3) for a determination that the Windels were the prevailing party for a Rule 82 attorney's fees

---

[24]    Rule 68(a)-(b) explain that when a litigant makes an offer for judgment "[i]f the judgment finally rendered by the court is at least five percent less favorable to the offeree than the offer . . . the offeree . . . shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred."

[25]    Rule 82 establishes the general framework for prevailing party attorney's fees awards. Rule 68(c) provides "if the amount awarded an offeror of attorney's fees under Civil Rule 82 is greater than a party would receive under [Rule 68] the offeree shall pay the offeror attorney's fees specified under Civil Rule 82."

award. The Windels argued that they were the prevailing party in the litigation because they succeeded on their equitable nuisance abatement claim, relying on cases holding that one who obtains affirmative relief may be a prevailing party even if prevailing on only one of multiple claims.

Carnahan responded that the validity of the 50-foot Davis Road easement had been the main issue in the litigation and he had prevailed on that issue, and that none of the claims dismissed by the settlement agreement enter into the prevailing party analysis. Carnahan argued that the nuisance claim was an afterthought in the litigation, not pleaded by the Windels and not contested by Carnahan. He concluded that it would be illogical to determine the Windels were the prevailing party in all of the litigation merely because they obtained an order for the installation of an additional culvert to remediate ponding problems despite Carnahan's willingness to do so without the order.

The Windels replied that Carnahan had not "beaten" his Rule 68 offer of judgment because they received equitable relief on their nuisance claim that was not provided for in the offer, and that Rule 68 is not applicable in cases where equitable relief is requested because no financial comparison can be made between the relief obtained and a monetary offer. The Windels also argued that because some of the parties' claims were dismissed as part of a settlement agreement, Carnahan should not be allowed to assert Rule 68 prevailing party status. Finally, the Windels argued that their nuisance claim had been raised in their original complaint, Carnahan had contested the claim, and they were the prevailing party on that claim.

Judge White denied the Windels' motion. She stated that "Carnahan was the prevailing party on the principal issue – the validity of the easements," and granted the Windels an additional month to oppose Carnahan's motion for attorney's fees.

The Windels filed their appeal within 30 days of the distribution of Judge White's denial of the motion to amend the final judgment. They listed three points on

appeal regarding attorney's fees: (1) the superior court erred in determining Carnahan was the prevailing party; (2) the superior court erred in failing to determine the Windels were the prevailing party; and (3) the superior court erred in its award of attorney's fees, both as to items for which an award was made and the amount of the award. But when the Windels filed their appeal, Judge White had not yet issued an order on the amount of attorney's fees.

Despite receiving extensions of time the Windels did not oppose Carnahan's motion for a final attorney's fees award. On September 23, 2010, Judge White awarded Carnahan Rule 82 attorney's fees of about $50,000 for all of the litigation, determining that Carnahan had not established that he had "beaten" his January 2006 offer of judgment. Judge White ruled that Carnahan prevailed on the most important issue in the case, the validity of the Davis Road easement. And Judge White noted that all damages claims had been settled without any party obtaining financial relief and the only issue actually tried was the equitable nuisance abatement which, although not generating a damages award, did result in an order directing Carnahan to remediate ponding caused by road construction. Judge White acknowledged that Carnahan had incurred expenses in remediating the ponding problem, which she stated was the functional equivalent of money damages, but noted that Carnahan had not demonstrated the remediation costs were less than the $10,000 set out in his offer of judgment.

In early October 2010 Carnahan moved for reconsideration of the attorney's fees award, asserting that the cost of the remediation ordered by the court was less than $10,000 and that he had "beaten" his January 2006 offer of judgment. He submitted an affidavit reflecting that the cost of the court-ordered remediation was approximately $4,000.

On November 10, 2010, the superior court file was transmitted to this court for the record on appeal. Although actually not in the record for this appeal, the parties included in their excerpts of the record additional documents filed in the superior court after the file was transmitted to this court. The documents reflect the following: (1) the Windels did not oppose Carnahan's reconsideration motion despite being given until November 22, 2010 to do so; (2) in April 2011 Judge White granted Carnahan's reconsideration motion in part; and (3) in July 2011 Judge White awarded Carnahan about $106,000 in Rule 68 attorney's fees.

In her April 2011 decision Judge White determined that the litigation could "effectively be bifurcated into two segments, one concerning the validity of the easements and associated damages issues, and the second solely regarding the nuisance claim." She then ruled that Carnahan "beat his offer of judgment during the first part of the litigation" and that "neither party prevailed for purposes of awarding attorney's fees during the second portion." Judge White therefore allowed Carnahan to recover Rule 68 attorney's fees from the time of his offer of judgment through September 14, 2009, when the amended settlement agreement was submitted resolving litigation of claims through that date and allowing the Windels to amend their complaint to add the nuisance abatement claim.

Apparently because the original final judgment, with the initial entry of Rule 82 attorney's fees in favor of Carnahan, was included in the record for this appeal, there is no revised final judgment reflecting the Rule 68 attorney's fees award to Carnahan.

## 2.    Preliminary issue — ripeness and reviewable points on appeal

The Windels' opening brief includes two arguments about the Rule 68 decision. The Windels first argue that Carnahan's Rule 68 offer of judgment "dealt with the trespass issues, which were settled, and not with the nuisance issues," contending that

the settlement agreement resolved all attorney's fees claims for the litigation up to the time of the amended complaint for the nuisance abatement claim. They next argue that it was error to determine Carnahan "beat" the offer of judgment.

The Windels also argue that under a Rule 82 analysis, the case should be considered in its entirety and Carnahan did not clearly prevail because they prevailed on the nuisance abatement issue. They alternatively argue that if the case could properly be bifurcated for analysis then (1) the first part of the case settled, and (2) they prevailed in the second part of the case.

Carnahan argues that because there is no revised final judgment reflecting the decision to award him Rule 68 attorney's fees, the Windels' appeal on attorney's fees issues is premature. He also contends that the Windels did not raise in the superior court their argument about the settlement agreement resolving attorney's fees and that the issue would require an evidentiary hearing; and therefore the Windels have waived the argument. Finally, he argues that he clearly "beat" his offer of judgment and was the prevailing party.

The Windels reply that they are not contesting the amount of attorney's fees awarded and therefore no factual issues remain to be decided. They contend that there are three legal questions presented for our review: (1) Who was the prevailing party? (2) Were attorney's fees properly awarded under either Rule 68 or Rule 82? And (3) if Rule 68 applied, did the superior court err in allowing Rule 68 attorney's fees through September 2009?

Relevant standards of review indicate that we may on this record examine whether the superior court erred in its interpretation and application of Rule 68 and whether the superior court erred in its prevailing party analysis for Rule 82. "We exercise our independent judgment in reviewing the superior court's interpretation of Rule 68, as well as in calculating a judgment's value to determine whether it exceeded

an offer of judgment."[26]  In connection with Rule 82 attorney's fees awards, "[w]e exercise our independent judgment in reviewing whether a trial court has applied the appropriate legal standard in making its prevailing party determination.  We . . . review a trial court's prevailing party determination for abuse of discretion and will overturn prevailing party determinations only if they are manifestly unreasonable."[27]

Accordingly, despite the procedural deficiencies in the Windels' appeal, we address legal questions raised and argued by the parties, as follows.

### 3. Rule 68 issues

#### a. Settlement agreement impact

We first reject the Windels' argument that the 2009 settlement agreement resolved attorney's fees for the litigation up to the point of the settlement.  We are, as Carnahan argues, unable to find anything in the record demonstrating that the Windels raised this issue in the superior court.  At best, we can review this part of the Windels' appeal for plain error.[28]  But we conclude there was no error, let alone plain error.

The settlement agreement first provided for a dismissal of all monetary claims — the Windels' damages claims mooted by the summary judgment ruling were dismissed without prejudice, and both parties' damages claims left open after the

---

[26]    *Dearlove v. Campbell*, ___ P.3d ___, Op. No. 6785 at 5, 2013 WL 2367887 at *3 (Alaska, May 31, 2013) (internal citations omitted).

[27]    *Schultz v. Wells Fargo*, ___ P.3d ___, Op. No. 6786 at 6-7, 2013 WL 2456234 at *3 (Alaska, June 7, 2013) (quoting *State v. Jacob*, 214 P.3d 353, 358 (Alaska 2009); *Taylor v. Moutrie-Pelham*, 246 P.3d 927, 928-29 (Alaska 2011); *Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1123, 1126 (Alaska 2012)) (internal quotation marks omitted).

[28]    *See Parks v. Parks*, 214 P.3d 295, 300 n.12 (Alaska 2009) ("We do not consider claims raised for the first time on appeal, absent plain error."(citing *Mellard v. Mellard*, 168 P.3d 483, 489 (Alaska 2007))).

summary judgment ruling were dismissed with prejudice.[29] The agreement also provided for the dismissal without prejudice of Carnahan's legal and equitable theories supporting the Davis Road easement's existence not resolved in the summary judgment ruling. The agreement next provided the framework for resolving the Windels' equitable nuisance abatement claim, summarized as follows: (1) the court would appoint an independent engineer to evaluate whether Carnahan's 2007 culvert installation had adequately abated the ponding on the Windels' property and to make recommendations; (2) if the parties agreed with the engineer's report and recommendations and Carnahan took the recommended measures, the parties would stipulate to dismiss the equitable nuisance abatement proceeding; and (3) if either or both of the parties found the engineer's report or recommendations unacceptable, the court would hold an evidentiary hearing at which each side could testify and present the testimony of one expert engineer.

The amendment to the settlement included the following provision regarding an appeal of the summary judgment ruling or a prospective nuisance abatement ruling:

> If at the conclusion of the abatement procedure no party objects to the engineer's report and recommendations, or to any determination thereon made by the court, the parties will request that the court issue a final judgment on its summary judgment decision, *which will be subject to motions for costs and attorneys fees, and to appeal.* If either party objects to the court's determination, after the evidentiary hearing . . . , then before any other work is performed pursuant to the engineer's report and the court's decision thereon, the parties shall request that the court enter a final judgment on its summary judgment decision and on the court's abatement

---

[29] These latter claims appear to be the Windels' trespass (beyond the 50-foot easement) and nuisance damages claims and Carnahan's easement-interference damages claim.

determination.  The final judgment *will be subject to motions for costs and attorney's fees, and to appeal.* (Emphasis added.)

Contrary to the Windels' argument, the emphasized language of this provision clearly reflects that the parties expected and left open questions of which party would be entitled to recover costs and attorney's fees for both the litigation up to the settlement agreement and the anticipated future litigation over the equitable nuisance abatement claim.  The Windels point to no extrinsic evidence in the record casting doubt on the provision's meaning.  Carnahan points to the parties' joint notice of the settlement agreement to the superior court, in which the parties stated that the issue whether the Windels' complaint already contained an equitable nuisance abatement claim or the Windels would be required to amend the complaint to add the claim "could play into the eventual prevailing party attorney's fees arguments."

The Windels argue in their reply brief that this case is similar to *Mackie v. Chizmar*,[30] in which we held that Rule 68 could not apply when, post-offer, the parties had stipulated to an alternative dispute resolution framework.[31]  But the dispute resolution framework in that case was expressly in lieu of a trial and the parties had not left open the possibility of an attorney's fee award in the dispute resolution framework.[32]  And we specifically noted that the holding "should not be construed to suggest that parties cannot retain the penalties of Rule 68 as part of an [alternative dispute resolution] procedure."[33]  We refused to put "artificial limits on what parties may agree to in

---

[30]    965 P.2d 1202 (Alaska 1998).

[31]    *Id.* at 1206.

[32]    *Id.*

[33]    *Id.*

fashioning [an alternative dispute resolution] process that meets their needs and concerns."[34]

Here the dispute resolution framework not only incorporated the possibility of a trial, a trial was held when the parties did not agree on the independent engineer's report and recommendations. And as noted above, the parties expressly left open the right of either party to move for costs and attorney's fees with respect to pre-settlement litigation and post-settlement litigation. We also note that another case the Windels cited, *Van Deusen v. Seavey*,[35] further erodes their argument. There we held that a partial settlement agreement allowing a party to timely file a motion for attorney's fees, without specifying either Rule 68 or Rule 82, would not be interpreted to preclude a motion for Rule 68 attorney's fees.[36] Accordingly, the parties' partial settlement agreement did not preclude Carnahan's motion for attorney's fees under either Rule 68 or Rule 82.

### b.     Application of Rule 68

We turn to the parties' arguments about the superior court's application of Rule 68 and its determination that Carnahan "beat" his January 2006 offer of judgment. We conclude that on the record before us it is impossible to determine whether (1) it was permissible to limit the application of Rule 68 to a bifurcated portion of the superior court proceedings, and (2) Carnahan "beat" his offer of judgment. We therefore remand the Rule 68 issue to the superior court for further proceedings.

When there is a single defendant, Rule 68(b) provides in relevant part:

If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer, . . . [then]

---

[34]     *Id*.

[35]     53 P.3d 596 (Alaska 2002).

[36]     *Id*. at 603-04.

the offeree . . . shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror from the date the offer was made . . . .

Rule 68's purpose is to encourage settlements and avoid prolonged litigation,[37] with earlier settlement offers potentially entitling the offeror to a greater percentage of attorney's fees.[38] In practice, the rule encourages parties to assess their litigation risks carefully and penalizes an offeree's rejection of a reasonable settlement offer.[39]

Because Rule 68's goal is to encourage settlement and avoid litigation, an offer of judgment must encompass every claim in the litigation.[40] We have emphasized

---

[37] *Mackie*, 965 P.2d at 1205 (citing *Pratt & Whitney Can., Inc. v. Sheehan*, 852 P.2d 1173, 1182 (Alaska 1993)).

[38] *See* Alaska R. Civ. P. 68(b).

[39] *Dearlove v. Campbell*, ___ P.3d ___, Op. No. 6785 at 7, 2013 WL 2367887 at *3 (Alaska, May 31, 2013). We note that an offer of judgment must not be a joint and un-apportioned offer to multiple offerees. *Jaso v. McCarthy*, 923 P.2d 795, 801(Alaska 1996) (citing *Grow v. Ruggles*, 860 P.2d 1225, 1227-28 (Alaska 1993)). In their reply brief, the Windels for the first time assert that Carnahan's offer of judgment is void because it was made to them jointly and un-apportioned. Because the issue was first raised in the Windels' reply brief, it is waived and we will not address it. *See Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010) ("Because we deem waived any arguments raised for the first time in a reply brief, we do not here reach the merits of these issues."). But we also note that the Windels alleged in their first amended complaint that they held title to their property as tenants by the entirety, and that a tenancy by the entirety is an undivided interest in real property — "[a] common-law estate in which each spouse [owns] the whole of the property. An estate by entirety is based on the legal fiction that a husband and wife are a single unit." BLACK'S LAW DICTIONARY 627 (9th ed. 2009); *see* AS 34.15.110(b) (explaining that husband and wife who own undivided interest in real property generally hold the estate as tenants by the entirety); AS 34.15.130 (abolishing joint tenancy but excepting tenancy by the entirety). We leave it to the superior court to first address this issue should it be raised after remand.

[40] *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1088 (Alaska (continued...)

the requirement that "an offer of judgment include all claims between the parties and be capable of completely resolving the case by way of a final judgment if accepted."[41] Here Carnahan attempted to comply with this requirement by adding the following language to his offer of judgment:

> This Offer of Judgment is in complete satisfaction of plaintiffs' claims and defendant's counterclaims, and includes every amount, damage and claim whatsoever pertaining to plaintiffs' claims and defendant's counterclaims now pled or otherwise arising from or out of the transactions and facts that led to this action.

This language seems broad enough to include not only Carnahan's post-offer assertion of a counterclaim for easement-interference damages,[42] but also the Windels' post-offer assertion of nuisance damages and equitable abatement relief. The basis for the superior court's decision that "the litigation can effectively be bifurcated into two segments," one of which would be subject to Carnahan's offer of judgment and one of which would not, is unexplained and appears contrary to our stated interpretation of Rule 68.[43]

The open bifurcation question contributes to our inability to determine whether Carnahan "beat" his offer of judgment. If the offer of judgment applies to the

---

[40]    (...continued)
2008).

[41]    *Id*. (citations omitted).

[42]    Because the issue is not presented to us, we express no opinion on whether an offeror may tender an offer of judgment and then later assert additional claims that materially change the litigation so that it might be unfair to enforce the original offer of judgment. We leave it to the superior court to first address this issue should it be raised after remand.

[43]    *Progressive Corp.*, 195 P.3d at 1088.

entire litigation, then the superior court's comparison of Carnahan's offer to the litigation up to the time of the settlement agreement is erroneous. But there are additional difficulties in the superior court's analysis. We have rejected the argument that voluntary payments and partial settlements must be ignored when comparing a final judgment to a previous offer of judgment.[44] Accordingly the superior court must consider the 2009 settlement agreement for its comparison, and, if the entire litigation is subject to Carnahan's Rule 68 offer of judgment, the superior court also must consider both Carnahan's voluntary 2007 nuisance remediation and the additional court-ordered nuisance remediation for the comparison.[45]

### 4. Rule 82 issues

We now address the Windels' "prevailing party" arguments as they apply to the superior court's original Rule 82 attorney's fees award to Carnahan, in the event the superior court on remand determines that Carnahan is not entitled to a Rule 68 attorney's fees award. "The prevailing party is the one who has successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered."[46] If

---

[44]    *Dearlove v. Campbell*, ___ P.3d ___, Op. No. 6785 at 8, 2013 WL 2367887 at *4 (Alaska, May 31, 2013); *Progressive Corp.*, 195 P.3d at 1088-90.

[45]    Because the issue is not before us, we express no opinion on the superior court's use of Carnahan's remediation costs as a functional equivalent to a benefit or damages awardable to the Windels.

[46]    *Schultz v. Wells Fargo*, ___ P.3d ___, Op. No. 6786 at 8, 2013 WL 2456234 at *4 (Alaska, June 7, 2013) (quoting *Taylor v. Moutrie-Pelham*, 246 P.3d 927, 929 (Alaska 2011)) (internal quotation marks omitted).

"both parties prevail on main issues, the superior court may also opt not to designate a prevailing party."[47]

There is considerable tension between (1) the superior court's initial consideration of the litigation as a whole and determination that Carnahan prevailed on the main issue of the litigation, and (2) its later determination that the litigation could "effectively be bifurcated into two segments." The latter determination suggests the court then considered the litigation to include two main issues, one involving the validity of the easement and related damages claims and one involving the Windels' equitable nuisance abatement claim.

There should be little dispute that Carnahan was the prevailing party on the first main issue — he obtained a ruling upholding the validity of the 50-foot Davis Road easement across W1, mooting the bulk of the Windels' damages claims. But if, as it seems, the superior court considered the equitable nuisance abatement claim as another main issue, then given not only the relief ultimately ordered in the Windels' favor but also Carnahan's voluntary 2007 remediation, it may be difficult to sustain a determination that neither party prevailed on this issue.

In light of the complex competing concerns and interests in determining the prevailing party or parties in this matter, the superior court should render sufficient findings of fact and conclusions of law in the event further appellate review proves necessary.

V.     **CONCLUSION**

For the reasons stated above we AFFIRM Judge White's decisions (1) upholding the validity of the 50-foot Davis Road easement across the Windels' W1

---

[47]     *Id.* (quoting *Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1123, 1126 (Alaska 2012)) (internal quotation marks omitted).

property, and (2) refusing to hold Carnahan personally responsible for future maintenance of Davis Road and the associated culverts. Because the easement is valid, we AFFIRM Judge Smith's dismissal of the Windels' claims against the title insurance companies. Finally, we REMAND the attorney's fees issues to Judge White for renewed consideration in light of our decision.