*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER.
Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts,
303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email
corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TOMMIE PATTERSON, | ) | |
| | ) | Supreme Court No. S-14338 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-06325 CI |
| v. | ) | |
| | ) | O P I N I O N |
| INFINITY INSURANCE COMPANY, | ) | |
| | ) | No. 6792 - June 28, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third
Judicial District, Anchorage, John Suddock, Judge.

Appearances: Tommie Patterson, pro se, Anchorage,
Appellant.  Rebecca J. Hozubin, Law Office of Hozubin &
Moberly, Anchorage, for Appellee.

Before:   Fabe, Chief Justice, Carpeneti, Winfree, and
Stowers, Justices.

CARPENETI, Justice.

I.      INTRODUCTION

A man who held motor vehicle insurance coverage was involved in a motor
vehicle accident. Following the accident, the insurance company paid the man's medical
providers the policy limit.  Two years later, the man filed suit against the insurance
company, alleging that it had shown bad faith following the accident.  The insurance
company moved for summary judgment.  The superior court granted the motion and

entered final judgment in the case. Just over one month later, the man filed a second lawsuit, alleging that the insurance company had falsely advertised its services, breached the insurance contract, embezzled money from him, falsified documents, and "threaten[ed] to make [him] at fault," for the accident. The insurance company moved for summary judgment, and the superior court granted its motion on the grounds that the man's entire suit was barred by the doctrine of res judicata. The man appealed. Because the man's embezzlement claim in the second suit alleges a distinct injury that constitutes a harm separate from that litigated in the first suit, we reverse the superior court's grant of summary judgment in regards to this claim and remand for proceedings consistent with this opinion. Because all of the man's other claims are barred by the doctrine of res judicata, we affirm the superior court in all other respects.

## II.    FACTS AND PROCEEDINGS

Tommie Patterson was involved in a motor vehicle accident in December 2006. At that time, he held motor vehicle insurance coverage with Infinity Insurance Company (Infinity). Patterson's policy provided that Infinity would pay for medical expenses from a motor vehicle accident totaling up to $5,000. Following the accident, he sought medical treatment and his medical providers in turn sought payment from Infinity. Infinity paid the providers $5,000 and then declined to make further payments.

### A.    Patterson's First Suit Against Infinity

In December 2008 Patterson filed suit against Infinity, alleging that Infinity "showed bad faith . . . by claiming that [Infinity] had paid medical bills that have never been paid and saying that [Patterson] was part of the cause of the [December 2006] accident." Patterson later clarified that Infinity had actually paid his medical bills, but "they were very slow paying these bills and [Patterson] was getting calls daily from doctors and the hospital." Patterson disputed the accuracy of affidavits submitted by Infinity employees, Stephen Nelson and Peggy Taggart, in regards to the timely payment

of his medical bills.  Finally, Patterson alleged that, "[w]ithout [his] knowing or approving," Infinity had continued to draw money from his checking account to pay premiums after he had cancelled his insurance policy.

In July 2009 Infinity moved for summary judgment, arguing that it fulfilled its contractual obligations to Patterson by paying out $5,000 and therefore there was no bad faith breach of contract.  Infinity also asserted that, even assuming Infinity employees had made comments regarding Patterson's fault in causing the accident, it "was not contractually obligated to refrain from offering opinions regarding [Patterson's] share of fault in any motor vehicle accident."  Patterson opposed Infinity's motion for summary judgment.

On October 14, 2009, the superior court granted Infinity's motion for summary judgment.  The court stated that Patterson provided "no facts or evidence to support his claim that Infinity was slow in paying his medical bills, nor [did] he inform the court of how long it actually took to pay the bills."  Regarding the alleged withdrawals from Patterson's checking account, the court concluded that "[t]he continuing withdrawal of premium payments has nothing to do with the underlying issues in this case and will therefore not be considered by the court."  The court also noted that it was unsure what Patterson meant when he said that Infinity told him that "he would be 'responsible for part of the accident,' " but concluded that the comment likely related to Infinity having explained that Patterson had a $5,000 policy limit on medical coverage.  Because Patterson had not demonstrated a genuine issue of material fact as to any alleged breach of contract, the superior court ruled that Infinity was entitled to judgment as a matter of law.

Patterson moved for reconsideration or recusal.  In his motion, Patterson argued that the assigned judge should have recused himself from the case for "incompetency."  Rather than rule on that request for recusal, the judge noted that

Patterson had not been notified of the judge's assignment to the case until distribution of the October 2009 summary judgment order. The court therefore allowed Patterson five days to exercise a peremptory challenge, which he did. The case was then transferred to another judge, who subsequently entered judgment in favor of Infinity. Patterson did not appeal the grant of summary judgment to Infinity.

### B.      Patterson's Second Suit Against Infinity

On April 15, 2010, Patterson filed a complaint alleging that Infinity had: (1) falsely advertised the protection it would afford Patterson; (2) breached the insurance contract by failing to represent Patterson in other litigation following the December 2006 accident; (3) embezzled money from Patterson by continuing to draw money from his account after cancellation; (4) falsified documents regarding the payment of his medical bills in relation to the December 2006 accident; and (5) committed fraud by "threatening to make [Patterson] at fault" for the accident. Patterson broadly asserted that all of Infinity's actions were in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).[1]

On October 26, 2010, Infinity filed a motion for summary judgment, contending that: (1) Patterson's suit was barred by res judicata and collateral estoppel; (2) Patterson's suit was barred by the statute of limitations; and (3) the superior court lacked jurisdiction over Patterson's RICO claims. Infinity also argued that Patterson had not shown a genuine issue of material fact and Infinity was entitled to judgment as a matter of law.

On May 13, 2011, Superior Court Judge John Suddock granted Infinity's motion for summary judgment, concluding that all of Patterson's claims were barred by res judicata. The court first determined that Patterson's earlier suit, which was dismissed

---

[1]      18 U.S.C. §§ 1961-1968 (2006).

on summary judgment, resulted in a valid final judgment. Because the parties involved in the two suits were also the same, the court concluded that the present case "revolve[d] around identity of claims between those currently at issue and those previously available to Mr. Patterson and Infinity." The court then analyzed the relationship between Patterson's two suits, concluding that Patterson's second suit asserted a similar harm as his first suit, relied on the same set of operative facts as his first suit, and would rely on the same evidence and proof as his first suit. In particular, the court concluded that both cases revolved around the "series of transactions" that flowed from the December 2006 accident. Accordingly, the court held that the doctrine of res judicata barred Patterson from bringing the present suit.

Patterson appeals the superior court's grant of summary judgment in favor of Infinity.

## III.   STANDARD OF REVIEW

"We review the grant of a summary judgment motion de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. All reasonable inferences are drawn in favor of the nonmovant in this examination."[2] "Whether res judicata applies is a question of law that we review de novo."[3]

## IV.   DISCUSSION

### A.   It Was Error To Conclude That Patterson's Embezzlement Claim Was Precluded By The Doctrine Of Res Judicata.

---

[2]   *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008) (footnote omitted) (citing *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 152 P.3d 460, 465 (Alaska 2007)).

[3]   *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006) (citing *DeNardo v. Calista Corp.*, 111 P.3d 326, 329 (Alaska 2005)).

In its May 2011 order, the superior court granted Infinity's motion for summary judgment on the grounds that all of Patterson's claims were barred by the doctrine of res judicata. The court concluded that, because both of Patterson's suits concerned alleged improprieties resulting from Infinity's conduct following the December 2006 accident, Patterson was precluded from bringing the present case.

Patterson contends that this court "should reverse the [s]uperior [c]ourt's findings that Infinity had a right to [s]ummary [j]udgment . . . . [a]nd that [r]es [j]udicata barred [him] from relitigating his case." Infinity responds that: (1) the superior court's order in the first case was a final judgment on the merits; (2) the superior court was a court of competent jurisdiction to hear the first case; and (3) the first case involved the same parties and the same underlying transaction.

"A judgment is given res judicata effect by this court when it is (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[4] A dismissal based on summary judgment constitutes a final judgment on the merits.[5] "[A] fundamental tenet of the res judicata doctrine is that it precludes relitigation between the same parties not only of claims that were raised in the initial proceeding, but also of those relevant claims that could have been raised then."[6] We have stated that "[t]he question of whether the cause of action is the same does not rest on the legal theory asserted but rather on whether the claims arise out of the same transaction — the same

---

[4] *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010) (citing *Smith*, 132 P.3d at 820).

[5] *See id.* at 616 (explaining that summary judgment is a decision on the merits).

[6] *Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981).

set of underlying facts."[7]  "We exercise pragmatism in making this determination and consider whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[8]

Because it was resolved on summary judgment, Patterson's first suit resulted in a final judgment on the merits.  Patterson does not allege that the superior court lacked jurisdiction to render a final judgment in the first case and we do not find any indication that the superior court lacked such jurisdiction.  Thus, because the parties are identical, the only issue is whether Patterson's claims in his second suit arise out of the same underlying transaction at issue in the first suit.

Patterson's first suit alleged that Infinity, in its conduct following the December 2006 accident, "showed bad faith . . . by claiming that [Infinity] had paid medical bills that have never been paid and saying that [Patterson] was part of the cause of the accident."  Patterson supported his bad faith claim with largely unsupported allegations that Infinity embezzled funds from him, failed to represent him as a plaintiff in lawsuits against other individuals involved in the accident, and falsified affidavits regarding payment of medical bills.  In general, Patterson broadly alleged that Infinity had used "deception and trickery" in its conduct toward Patterson.  In his second suit, Patterson alleged that Infinity, in its conduct following the December 2006 accident:  (1) falsely advertised the protection it would afford Patterson; (2) breached the insurance contract by failing to represent Patterson in other litigation; (3) embezzled money from Patterson by continuing to draw money from his account after cancellation; (4) falsified

---

[7]     *Angleton*, 238 P.3d at 614.

[8]     *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 141 (Alaska 2004) (quoting *McElroy v. Kennedy*, 74 P.3d 903, 908 (Alaska 2003)) (internal quotation marks omitted) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982)).

documents regarding the timely payment of his medical bills; and (5) committed fraud by "threatening to make [Patterson] at fault" for the accident.

Patterson's allegations that Infinity failed to represent him in other litigation, failed to timely pay his medical claims, and threatened to make him at fault in the December 2006 accident were directly at issue in the first case. Accordingly, each of these claims is barred by res judicata.

Unlike the above three claims, however, Patterson's claim that Infinity falsely advertised the protection it would afford him was not explicitly brought in his first suit. But Patterson's false advertising claim is merely a new legal theory derived from the same underlying facts alleged in his first case. The legal analysis necessary to prove Patterson's false advertising claim would include an analysis of Patterson's insurance contract with Infinity as well as Infinity's course of conduct following the December 2006 accident, both of which were directly at issue in the first case. As the superior court pointed out, "Patterson could have raised [his false advertising] claims as part of [the first] lawsuit against Infinity, but he failed to do so." Because Patterson's false advertising claim arises from the same alleged injury, alleges a similar harm, and would require similar proof as his claims in the first case, we conclude that Patterson's false advertising claim is barred by the doctrine of res judicata.[9]

Patterson's embezzlement claim requires a different analysis. Like his false advertising claim, Patterson did not explicitly assert a claim for embezzlement against

---

[9]    *See Tope v. Christianson*, 959 P.2d 1240, 1243 (Alaska 1998) ("Res judicata precludes subsequent litigation of any claim that was or could have been litigated in the earlier proceeding."); *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 168 (Alaska 1997) ("Res Judicata prevents the relitigation in a second suit for relief from judgment of matters which were adjudged *or could fairly have been adjudged* in the first suit." (quoting *Pankratz v. State, Dep't of Highways*, 652 P.2d 68, 74 (Alaska 1982))) (internal quotation marks omitted).

Infinity in the first case — although he did allege that Infinity had impermissibly withdrawn money from his bank account after he had cancelled his policy as part of his claim that Infinity had acted in bad faith. Patterson's embezzlement claim would therefore require at least some similar proof as his bad faith claim in the first case. Despite this overlap in evidence, Patterson's embezzlement claim alleges injury and harm — pecuniary harm caused by the withdrawal of funds from his bank account — that is distinct from his original bad faith claim, which primarily regarded conduct directly resulting from the December 2006 accident.[10] Moreover, the superior court in the first case found that Patterson's embezzlement claim had "nothing to do" with Patterson's other claims and declined to consider the issue at all. We therefore reverse the superior court's res judicata-based grant of summary judgment in regard to Patterson's embezzlement claim.

### B. Patterson Was Provided A Full And Fair Opportunity To Be Heard On The Issues In His First Case.

Patterson argues that he was not "given a [f]ull and fair opportunity to be heard on the issues" in his first case. Generally, "[a]pplication of res judicata depends only upon the plaintiff having had a full and fair *opportunity* to litigate his claims . . . ."[11] In support of his argument, Patterson contends that: (1) his first case was dismissed without a trial in violation of his constitutional right to a jury trial; (2) the first assigned judge should have recused himself because he had previously represented insurance

---

[10]     *See Smith v. CSK Auto, Inc.*, 132 P.3d 818, 822 (Alaska 2006) (holding claim not barred by res judicata where it stemmed from a different injury, caused a different harm, and required different proof than claims in first complaint); *Alderman*, 104 P.3d at 141.

[11]     *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1254 (Alaska 2001) (internal quotation marks omitted).

companies for other reasons; and (3) Patterson was not informed of a change of judge in the first case.

Even as applied to a pro se litigant, "it is clear that summary judgment is not unconstitutional."[12] We have explained:

> We have routinely affirmed use of the summary judgment procedure by the superior courts, and have limited the procedure to cases in which the pleadings and evidence show "that there is no genuine issue as to any material fact and that [the moving] party is entitled to a judgment as a matter of law." This standard is adequate to prevent the violation of a party's due process right or right to a jury trial.[13]

Thus, Patterson's constitutional right to a jury trial was not violated in the first case.

Next, Patterson fails to explain how the first judge's failure to recuse himself because he previously represented insurance companies denied Patterson an opportunity to be fully and fairly heard. Alaska Statute 22.20.020(a) sets out the reasons for recusal.[14] None of these reasons applies in this case. Patterson's argument is most

---

[12] *Capolicchio v. Levy*, 194 P.3d 373, 380 (Alaska 2008) (summary judgment not unconstitutional when applied to pro se litigant).

[13] *Id.* at 380-81 (footnote omitted).

[14] AS 22.20.020(a) provides:

(a) A judicial officer may not act in a matter in which

(1) the judicial officer is a party;

(2) the judicial officer is related to a party or a party's attorney by consanguinity or affinity within the third degree;

(3) the judicial officer is a material witness;

(4) the judicial officer or the spouse of the judicial officer, individually or as a fiduciary, or a child of the judicial

(continued...)

appropriately characterized as based on AS 22.20.020(a)(9), which provides that "[a] judicial officer may not act in a matter in which . . . the judicial officer feels that, for any reason, a fair and impartial decision cannot be given." The fact that a superior court judge previously represented other insurance companies does not, without any further evidence, require the conclusion that Patterson was denied a full and fair opportunity to litigate his claims in his first suit. Moreover, if Patterson thought there was any procedural error or impropriety in the first case, the remedy would have been to appeal the court's final judgment in that case.

---

**14** (...continued) officer has a direct financial interest in the matter;

(5) a party, except the state or a municipality of the state, has retained or been professionally counseled by the judicial officer as its attorney within two years preceding the assignment of the judicial officer to the matter;

(6) the judicial officer has represented a person as attorney for the person against a party, except the state or a municipality of the state, in a matter within two years preceding the assignment of the judicial officer to the matter;

(7) an attorney for a party has represented the judicial officer or a person against the judicial officer, either in the judicial officer's public or private capacity, in a matter within two years preceding the filing of the action;

(8) the law firm with which the judicial officer was associated in the practice of law within the two years preceding the filing of the action has been retained or has professionally counseled either party with respect to the matter;

(9) the judicial officer feels that, for any reason, a fair and impartial decision cannot be given.

Regarding Patterson's final argument, it is true Patterson was not notified of the first judge's assignment to the first case until after distribution of the judge's order on summary judgment. But Patterson was not denied an opportunity to contest the court's procedure in the first case — rather, the first judge allowed a motion for rehearing on the superior court's summary judgment order, which the succeeding judge ultimately denied. Patterson did not challenge that decision or any procedural deficiency in the first case by filing an appeal. Because Patterson could have challenged any procedural deficiency by filing an appeal, Patterson had an opportunity to fully and fairly litigate his claims in the first case. That Patterson chose not to pursue an appeal in the first case does not preclude application of res judicata in the present case.[15] We therefore conclude that Patterson was afforded a full and fair opportunity to litigate his claims in the first suit.

## V.    CONCLUSION

Because Patterson's embezzlement claim arises from a distinct injury and constitutes a separate harm, we REVERSE the superior court's grant of summary judgment in regards to this claim and REMAND for further proceedings consistent with this opinion. Because all of Patterson's other claims are barred by the doctrine of res judicata, we AFFIRM the superior court in all other respects.

---

[15]    *See Smith v. CSK Auto, Inc.*, 132 P.3d 818, 823 (Alaska 2006) (upholding decision based on res judicata despite alleged error and due process deficiencies in first case because "[a] party's remedy for an alleged erroneous decision in an earlier action is limited to an appeal from that action" and noting that "[r]elitigation of the issues or claims is not permissible simply because the party alleges error in the first action").