*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KEVEN WINDEL and MARLENE WINDEL, | ) ) ) | Supreme Court No. S-17159 |
| Appellants, | ) ) | Superior Court No. 3PA-15-02151 CI |
| v. | ) ) | O P I N I O N |
| MATANUSKA-SUSITNA BOROUGH, | ) ) ) | No. 7560 – October 8, 2021 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, and Marlene Windel and Keven Windel, pro se, Wasilla, for Appellants. John Aschenbrenner, Deputy Borough Attorney, and Nicholas Spiropoulos, Borough Attorney, Matanuska-Susitna Borough Attorney's Office, Palmer, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

Property owners sued the Matanuska-Susitna Borough, challenging the validity of easements that cross their property to give access to neighboring residences.

The superior court dismissed most of the property owners' claims on res judicata grounds, reasoning that the claims had been brought or could have been brought in two earlier suits over the same easements. The court also granted the Borough's motions for summary judgment or judgment on the pleadings on the property owners' claims involving the validity of construction permits, redactions in public records, and whether the Borough had acquired a recent easement through the appropriate process.

One claim remained to be tried: whether the Borough violated the property owners' due process rights by towing their truck from the disputed roadway. The court found in favor of the Borough on this claim as well and awarded the Borough enhanced attorney's fees, finding that the property owners had pursued their claims vexatiously and in bad faith. The property owners appeal.

We conclude that the superior court correctly applied the law and did not clearly err in its findings of fact. We therefore affirm the superior court's judgment.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Keven and Marlene Windel purchased three contiguous lots near Wasilla in 1986, 1987, and 1998 from Robert and Evelyn Davis and their successors in interest.[1] Davis Road, which passes through the Windels' parcels designated W1 and W2, is encumbered by a 50-foot-wide public easement that preexisted the Windels' purchase of the property.[2] The Windels have contested others' rights to use Davis Road in four lawsuits including this one. This suit involves two easements on the Windels' stretch of

---

[1]     *See Windel v. Mat-Su Title Ins. Agency, Inc.*, 305 P.3d 264, 267 (Alaska 2013) (setting out, in previous appeal, relevant underlying facts).

[2]     *Id.*

Davis Road (the Davis and Smith/Johnson easements);[3] two easements that provide access from Davis Road to adjacent properties (the Mason and Vision View easements); and an easement that provides a turnaround at the end of Davis Road (the Biss easement).

### 1.      The Carnahan and title company suits

Thomas Carnahan owned property accessible by Davis Road.[4]  In 2004, in the process of subdividing his property, he attempted to upgrade the road to satisfy conditions the Borough had placed on his subdivision application.[5]  The Windels sued Carnahan, claiming that his work on the road had damaged their property and seeking a declaratory judgment that the Davis Road easement was only 14 feet wide rather than 50.[6]  The superior court granted summary judgment to Carnahan on the Windels' claims regarding the scope and validity of the easement.[7]

The Windels next sued Mat-Su Title and Security Union Title, which had provided title insurance for the Windels' 1986 purchase of W1 and had noted the existence of the Davis Road easement.[8]  The Windels alleged that the title companies had breached duties in both tort and contract by failing to evaluate the easement's potential

---

[3]      The Davis easement has been variously identified as the Davis Road easement and the South Davis Road easement at different times during the Windels' lawsuits.  We use the term "Davis Road easement" to designate that portion of the Davis Road easement that encumbers W1, and we use the term "Smith/Johnson easement" to designate the portion that encumbers W2.

[4]      *Mat-Su Title*, 305 P.3d at 267.

[5]      *Id.*

[6]      *Id.* at 268.

[7]      *Id.*

[8]      *Id.*

invalidity.[9] The superior court granted summary judgment to the title companies, concluding that the Davis Road, Smith/Johnson, Vision View, and Mason easements were all valid.[10]

The Windels appealed both the Carnahan and the title company cases, which we consolidated for decision.[11] We affirmed the superior court's judgment in the Carnahan case that "the Davis Road easement over W1 is a valid 50-foot easement," and we affirmed the judgment in the title company case because "the representation the title companies made — that the Windels' property was subject to a 50-foot wide roadway easement — was true."[12]

### 2. The first Matanuska-Susitna Borough suit

In 2014 the Windels filed suit against the Borough and Vision View Estates Owners Association, which represented the homeowners in Carnahan's subdivision. The Windels sought to enjoin any further improvement of Davis Road, alleging that "[a] legal question presently exists as to whether the entire Davis Road is a private road or a public road." They accused the Borough of failing to go through the required public processes for accepting public easements and for spending money on Davis Road's maintenance.

The Windels also claimed that they were "in the process" of constructing an alternate access route to the properties reachable via the Smith/Johnson easement — crossing their parcel W2 — which the Windels alleged had not been involved in the prior litigation. They asserted that as of October 2014, when the alternate access "should be [completed]," the Smith/Johnson easement would terminate by its

---

[9] *Id.*

[10] *Id.* at 269.

[11] *Id.* at 270.

[12] *Id.* at 273, 274.

express terms. They further asserted that the potential termination of the Smith/Johnson easement meant that the Borough could not lawfully accept the Davis Road easement, because the termination provision was an encumbrance and the Borough was limited by ordinance to accepting rights of way that were unencumbered.

Vision View moved to dismiss the Windel's claims on res judicata grounds and for failure to state a claim on which relief could be granted. The Borough joined the motion, which the superior court granted in February 2015 with a handwritten notation: "No opposition filed despite [notice]." The Windels again appealed to this court, but they voluntarily dismissed their appeal before we heard it.

### B.    Current Proceedings

The Windels sued the Borough again in 2015, challenging the validity of the Davis Road, Smith/Johnson, Mason, Vision View, and Biss easements. They challenged redactions in Borough documents they had obtained through public records requests and the validity of construction permits issued for Davis Road's maintenance. They also sought reimbursement for costs they had incurred when the Borough towed their truck from where it was allegedly impeding traffic on Davis Road.

The superior court disposed of most of the Windels' claims before trial. It dismissed the majority of them on res judicata grounds, reasoning that they either were raised or could have been raised in the Windels' earlier suits. The court dismissed the challenge to the Borough's acceptance of the newer Biss easement for failing to state a claim upon which relief could be granted. It upheld the Borough's document redactions based on attorney-client privilege and affirmed the validity of the challenged construction permits. On the one issue remaining — the allegedly wrongful towing of the Windels' truck — the court held a bench trial and concluded that the towing was lawful and the Windels were owed no damages.

The court entered final judgment for the Borough on all the Windels' claims. It then awarded the Borough "80% of [its] actual attorney's fees, or $48,620.00," finding that the Windels' "claims were baseless, unreasonable, frivolous, and brought in bad faith." The Windels appeal.

## III.  STANDARD OF REVIEW

We review summary judgment decisions de novo, "affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[13] We also review "the grant of a motion for judgment on the pleadings de novo."[14]

We review de novo whether res judicata or a privilege applies, using our independent judgment.[15] "We apply our independent judgment when interpreting the Alaska Statutes, municipal charters, and municipal codes."[16]

## IV.  DISCUSSION

### A.  The Superior Court Was Correct To Dismiss 13 Of The Windels' Claims On Res Judicata Grounds.

The superior court applied res judicata to 13 of the Windels' claims, all of which consisted of either procedural or substantive attacks on the validity of the various Davis Road easements. The res judicata doctrine prevents a party from reasserting "a

---

[13]     *Ebli v. State, Dep't of Corr.*, 451 P.3d 382, 386-87 (Alaska 2019) (quoting *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1030 (Alaska 2011)).

[14]     *Anderson v. State, Dep't of Admin., Div. of Motor Vehicles*, 440 P.3d 217, 219 (Alaska 2019) (quoting *Cornelison v. TIG Ins.*, 376 P.3d 1255, 1267 (Alaska 2016)).

[15]     *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013) (res judicata); *Griswold v. Homer City Council*, 428 P.3d 180, 185 (Alaska 2018) (privilege).

[16]     *Municipality of Anchorage v. Holleman*, 321 P.3d 378, 381 (Alaska 2014).

cause of action that has already been litigated and decided."[17]  "A judgment is given res judicata effect . . . when it is (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[18]  Privies include non-parties who "(1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) [were] represented by a party in a capacity such as trustee, agent, or executor."[19]  If the res judicata doctrine applies, "it precludes relitigation between the same parties not only of claims that were raised in the initial proceeding, but also of those relevant claims that could have been raised then."[20]

The Windels argue that their 13 dismissed claims satisfy neither the privity requirement nor the same cause of action requirement of the res judicata doctrine.  But we agree with the superior court's decision that the doctrine applies.

### 1.	The privity requirement is met for all 13 claims.

We first address whether this suit and the two on which the superior court relied for res judicata — the 2005 Carnahan suit and the 2014 Borough suit — involved

---

[17]	*Conitz v. Alaska State Comm'n for Human Rights*, 325 P.3d 501, 507 (Alaska 2014) (quoting *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 820-21 (Alaska 2006)).

[18]	*Patterson*, 303 P.3d at 497 (quoting *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010)).

[19]	*Strong v. Williams*, 435 P.3d 872, 875 (Alaska 2018) (quoting *State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty*, 167 P.3d 64, 73 (Alaska 2007)).

[20]	*Patterson*, 303 P.3d at 497 (quoting *Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981)).

"the same parties (or their privies)."²¹  The Borough was not a party to the 2005 Carnahan suit,²² as the Windels point out.  But in the 2014 Borough suit — involving the same parties as this case — the court concluded that res judicata barred the Windels' claims because of the final judgment in the Carnahan suit; this conclusion necessarily included a finding that the privity requirement was satisfied.²³  The Windels appealed that order but voluntarily dismissed their appeal.  This means that privity between the parties to the Carnahan suit and those to the 2014 Borough suit was established by res judicata.  The parties to this suit are the same as they were in the 2014 suit.  The "same parties (or their privies)"²⁴ element of res judicata is thus established, as the superior court correctly concluded.

## 2. The same cause of action requirement is met for all 13 claims.

We next address the same cause of action requirement:  whether the claims raised in this case are the same claims raised in the Carnahan suit and the 2014 Borough

---

²¹  *Id.*

²²  *See Windel v. Mat-Su Title Ins. Agency, Inc.*, 305 P.3d 264, 268-70 (Alaska 2013).

²³  The summary judgment order in the 2014 Borough case did not explain the court's reasoning other than to note the absence of opposition, but " '[w]hen a trial court grants summary judgment without stating its reasons,' we 'presume[] that the court ruled in the movant's favor on all of the grounds stated.' "  *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 974 (Alaska 2005) (second alteration in original) (quoting *Reed v. Municipality of Anchorage*, 741 P.2d 1181, 1184 (Alaska 1987)).  The Borough had argued that it was in privity with Carnahan because he sought to establish the easement's validity on behalf of the public, which included the Borough.

²⁴  *Patterson*, 303 P.3d at 497 (quoting *Calhoun*, 636 P.2d at 72).

suit or are "relevant claims that could have been raised then."[25]  In the 2005 Carnahan suit the superior court determined that the Davis Road easement, the Smith/Johnson easement, the Vision View easement, and the Mason easement were all valid; we affirmed the superior court's judgment.[26]  In 2014 the superior court presumably relied on the Carnahan case when it dismissed the Windels' challenges on res judicata grounds. And the superior court in this case relied on both the 2005 and 2014 cases in disposing of the Windels' claims, again on res judicata grounds.  We must therefore decide whether the claims here involve the same causes of action as the 2005 Carnahan and 2014 Borough cases.

Counts 1, 2, 3, 4, 10, and 11 of the Windels' complaint challenge the validity of the Davis Road and Mason easements.  The superior court found both easements to be valid in the 2005 Carnahan case, and we affirmed.[27]  In the 2014 Borough case the superior court dimissed a challenge to the continuing validity of the Smith/Johnson easement on res judicata grounds.  As counts 1, 2, 3, 4, 10, and 11 either were raised or could have been raised in the 2005 case, the superior court correctly concluded that they were barred again on res judicata grounds.

Counts 6, 7, and 8 of the Windels' complaint contend that the Borough should never have accepted jurisdiction over Davis Road, cannot lawfully spend public money on its maintenance, and, even if it accepts the road, cannot maintain it to Vision View, which the Windels argue is an illegal subdivision.  The superior court determined

---

[25]    *Id.* (quoting *Calhoun*, 636 P.2d at 72).

[26]    *Mat Su Title*, 305 P.3d at 273.  The appeal in the Carnahan case involved only the width of the Davis Road easement, Carnahan's responsibilities for maintenance, and attorney's fees; the Windels did not appeal issues specific to the other easements. *Id.* at 270.

[27]    *Id.* at 273.

that these claims were raised or could have been raised in the 2014 case. That lawsuit directly challenged both the Borough's acceptance of Davis Road as a public use easement and its maintenance of the road leading to the Vision View subdivision. We therefore agree with the superior court's conclusion that counts 6, 7, and 8 were or could have been raised in 2014 and are barred by res judicata.

Count 12 of the Windels' complaint challenges Borough maintenance of the roads for Vision View. Count 15 alleges that the Borough has plans to illegally take the Windels' property in the process of "accepting" Davis Road. Count 16 seeks a general declaratory judgment that the Borough has unclean hands because of its alleged violations of regulatory requirements. And count 17 alleges that all of the previous counts of the complaint allege an ongoing nuisance that must be abated by court order. All these claims were raised, or could have been raised, in 2014; the superior court correctly ruled that res judicata prevented the Windels from raising them again.

**B.      The Windels' Unpled Claim Regarding Alternate Access Is Waived.**

We now turn to a claim that the Windels did not include in their complaint but which appeared for the first time in their opposition to the Borough's summary judgment motion. Because the superior court arguably mentioned it in its summary judgment order and the Windels brief it on appeal, we discuss it as well, though we conclude it was waived due to inadequate briefing.

In their opposition to summary judgment the Windels pointed to the terms of the Smith/Johnson easement, which stated that the easement would "endure perpetually or until such time as further subsequent development or subdivision of the remainder of [the Windels' property] shall provide alternate legal and physical access to" the property to which the Smith/Johnson easement gave access. The Windels asserted that they had recently constructed "alternate legal and physical access" in the form of "[a] ten (10) foot private access driveway" along the edge of their property. According

to a document the Windels signed and recorded a few months earlier, "[t]he right to use this private access driveway [was] limited to the right of property owners and their guests to travel over, across and upon the driveway." In their opposition to summary judgment, the Windels contended that their creation of this driveway automatically terminated the Smith/Johnson easement according to its express terms.

The Windels had made a similar claim in 2014, although at the time their claim was only prospective. They contended not that they had already built an alternate access route, but that they planned to do so; that when they built the alternate route the Smith/Johnson easement would terminate by its terms; and that the impending termination was an encumbrance that prevented the Borough from lawfully accepting the Smith/Johnson easement as a public right of way. The Borough argued that this claim for prospective termination was barred by res judicata, and the superior court apparently agreed.

In this case, although not explicit about its reasoning for rejecting this unpled claim, the superior court apparently included it in its res judicata ruling. On appeal the Windels simply repeat their argument that the easement terminated and contend that their right to terminate the easement by creating an alternate access route "was an issue remaining in this case." Neither party substantively addresses what we see as a determinative question: whether the prospective claim filed in 2014 (that the alternate route was going to be built, terminating the easement) and the ostensibly riper claim filed in 2015 (that the alternative route *had* been built, terminating the easement) are "the same cause of action" for purposes of res judicata.[28] The Windels' failure to engage with the basis of the superior court's decision is reason enough for us to treat this

---

[28]     *See Patterson*, 303 P.3d at 497.

unpled claim as waived.[29]

**C.    The Superior Court Properly Dismissed The Windels' Claim That The Biss Easement Was An Unlawful Dedication.**

The Biss easement is a turnaround point at the end of Davis Road, which the Bisses gave the Borough in consideration of a single dollar. Count 5 of the Windels' complaint challenges this easement, contending that the Borough failed to go through the lawful process for acquiring it and it is therefore invalid. The superior court dismissed this claim on the pleadings.[30]

The Borough's Code provisions authorize it to acquire property in several different ways, including by dedication and by donation. The Borough may acquire property by dedication "if the dedication will benefit the borough and the public and

---

[29]    *See Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016) (stating that "where a point is given only a cursory statement in the argument portion of a brief, [it] will not be considered on appeal" (quoting *Burts v. Burts*, 266 P.3d 337, 344 (Alaska 2011))).

The unpled claim was never developed in the superior court, either legally or factually. The Windels first produced the document by which the easement was granted while the Borough's summary judgment motion was already pending, and the Borough responded in a short memorandum indirectly citing AS 29.40.140(b). The statute provides, in part, that "[v]acation of a street in the borough area outside all cities may not be made without the consent of the assembly." The Borough thus raised the legal question whether, once it has accepted a public right of way and assumed responsibility for its maintenance, a private party can terminate the public's rights by unilateral action. The Windels did not address this legal issue in the superior court, nor do they do so on appeal. Their argument simply assumes that the Borough is required to accept their proffered 10-foot-wide "driveway," open only to property owners and their guests, as equivalent to the 50-foot-wide Smith/Johnson public easement.

[30]    The superior court relied on the allegations of the Windels' complaint to conclude that the Biss easement was not subject to res judicata because it was created after the 2014 Borough suit was filed.

meets the borough subdivision regulations,"[31] which in turn require that the acquisition of a public use easement be subject to a public hearing.[32] An acquisition by donation, on the other hand, involves less formal process: the Borough may acquire an interest in real property by donation "if the donation will benefit the borough and is accepted by the assembly or manager."[33]

The superior court ruled that the Borough properly treated the Biss easement as a donation, acquired simply with the Borough manager's approval. We note that acquisition by dedication and acquisition by donation are similarly described in the Code and are not further defined; the Bisses' grant of a right of way in exchange for nominal consideration could be categorized as either or both.[34] We give "considerable deference" to local authorities' interpretations of their zoning ordinances and planning documents.[35] Furthermore, as the superior court observed, we are required to give "[a] liberal construction . . . to all powers and functions of a municipality conferred in" AS Title 29,[36] which include "planning, platting, and land use regulation on an areawide

---

[31] Matanuska-Susitna Borough Code (MSB) 23.05.030(B)(3) (2019).

[32] MSB 43.10.060(A) (2017).

[33] MSB 23.05.030(B)(2).

[34] Commonly, a "donation" is a "gift." *See Donation*, BLACK'S LAW DICTIONARY (11th ed. 2019). A donation may be a type of dedication. *See Dedication*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "dedication" as "[t]he donation of land or creation of an easement for public use").

[35] *Native Vill. of Eklutna v. Bd. of Adjustment for the Municipality of Anchorage*, 995 P.2d 641, 643 (Alaska 2000).

[36] AS 29.35.400; *see also* AS 29.04.030 (identifying "first class boroughs" as one class of "[g]eneral law municipalities").

basis."[37]

The law does not plainly require the Borough to hold a hearing to consider whether to acquire a right of way like the Bisses', and the Borough's interpretation of the undefined terms in its ordinance is a reasonable one consistent with the statutory grant of broad authority over planning and land use.[38] We therefore agree with the superior court's determination that the easement was acquired by donation, not dedication, and that no further process was required. It was not error to grant the Borough judgment on the pleadings on this count of the Windels' complaint.

**D**.    **The Superior Court Did Not Err By Granting Summary Judgment To The Borough On The Construction Permit Allegations.**

Count 14 of the Windels' complaint challenged the construction permit the Borough issued Vision View and Carnahan for upgrading Davis Road. The Windels contended that such permits may be issued only to adjacent property owners, and Vision View and Carnahan — although they owned property reachable by Davis Road — did not own property adjacent to the road where it passed over the Windels' property. The Borough moved for summary judgment on this issue, relying on an ordinance authorizing generally the performance of maintenance activities within the Fairview Road Service Area, which includes Davis Road.[39] The court accepted this argument,

---

[37]    AS 29.40.010(a).

[38]    *See Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 254 (Alaska 2000) ("[W]here the agency's expertise or questions of fundamental policy are involved, an agency's interpretation of a zoning ordinance should be reviewed under the deferential 'reasonable basis' standard and should be accepted whenever reasonable." (quoting *S. Anchorage Concerned Coal., Inc. v. Coffey*, 862 P.2d 168, 173 n.12 (Alaska 1993))).

[39]    MSB 05.25.018(A) (including Township 17 North, Range 1 West in the
(continued...)

noting in its order that the Windels did not provide any support for their assertion that construction permits were limited by law to adjacent property owners.

The Windels make the same argument on appeal, relying only on a portion of the permit application that asks the applicant to "[g]ive the legal description of property owned by applicant adjacent to construction." But as the superior court pointed out, there is no indication on the form that this "is a required field in the application process," nor did the Windels provide any support for the proposition that the form's instruction reflects an actual policy or legal requirement. We agree with the superior court that the Borough was entitled to summary judgment on this issue.

### E. The Superior Court Did Not Err By Upholding The Borough's Claims Of Attorney-Client Privilege In Its Document Redactions.

In response to the Windels' public records requests, the Borough produced documents that had been partially redacted on grounds of attorney-client privilege. Documents covered by the privilege are excepted from the Alaska Public Records Act.[40] A court considering whether the privilege applies to public records should conduct an in camera review and invite arguments from the holder of the privilege as to why portions of the material should be considered privileged.[41]

The superior court in this case did exactly what was required of it, and as a result it upheld the Borough's redactions, finding that the redacted material "relate[d]

---

[39]    (...continued)
Fairview Road Service Area description), (B) (stating that "[s]ervices provided within [the Fairview Road Service Area] include the construction, reconstruction and maintenance of roads, streets, sidewalks and related drainage facilities").

[40]    *Griswold v. Homer City Council*, 428 P.3d 180, 188 (Alaska 2018); AS 40.25.100-40.25.295.

[41]    *Griswold*, 428 P.3d at 188 (citing *In re Mendel*, 897 P.2d 68, 75 (Alaska 1995)).

to requests for legal advice outside the ordinary course of business." The court further noted that "[a]t oral argument, the Borough identified each recipient of the document as an individual falling within the privilege; the Windels offered no evidence to the contrary."

The Windels' argument on appeal takes issue with the superior court's factual findings; they dispute that the recipients could all have been covered by the privilege, as the court found, and they contend that it is "improbable that every word or sentence in the emails pertains to the actual communications between the Attorney and the client," as the court also found. But their generalized attack identifies no specific documents or individuals that were wrongly categorized as covered by the privilege. We see no reason to conclude that the superior court erred in granting summary judgment to the Borough on this claim.

**F. The Windels Were Not Deprived Of Due Process When Their Truck Was Removed From Davis Road.**

Only one of the Windels' claims survived the motion practice and went to trial: their claim that the Borough violated due process by towing their truck from Davis Road. The court concluded that the Borough was authorized to tow the Windels' truck, and it found that the Borough gave appropriate notice before doing so. The Windels dispute these conclusions. They concede that "[p]rior to towing, the Windels' truck remained parked within the Davis easement for weeks," but they argue that Davis Road is a private road, meaning that they had every right to park there, and they dispute that the Borough adequately notified them of its intention to tow the truck away.

The superior court made findings of fact on these issues. The court found that the truck was parked in the roadway of Davis Road and partially blocked access. It found that a Borough employee first noticed the truck in late September 2013, flagged it with ribbons, and left a card asking that it be moved. When he returned over a month

later the truck was still there, but the ribbons and card had been removed. The Borough employee then tagged the truck for towing, put ribbons on it again, and left an impound notice indicating that the truck would be towed on November 4. On November 6 the notice and ribbons were still there; on November 9 the truck was towed away and impounded. The Borough sent the Windels a certified letter notifying them of the impoundment.

The Borough Code allows the Borough to remove abandoned vehicles from public rights of way.[42] Abandoned vehicles include vehicles that have been left on a public right of way for more than 72 hours without Borough consent.[43] The superior court concluded that the Windels' truck had been "parked and unattended on Davis Road, a public right-of-way, for significantly longer than [72] hours, triggering the presumption of abandonment." The court determined that there was no due process violation under these circumstances.

The evidence amply supports the court's conclusion. Davis Road is a public right of way.[44] Instead of immediately towing the Windels' truck, which had been left in the public right of way for far longer than 72 hours, the Borough repeatedly

---

[42]     MSB 10.12.030(A).

[43]     MSB 10.12.020.

[44]     The Windels point to the 2005 Carnahan suit to argue that Davis Road is a private road, noting that the superior court in that case concluded as a matter of law "that [Davis Road] is a private road over which the Borough has not exercised dominion." But this finding was in a different legal context; the question was whether Borough drainage standards applied to a road that had so far been used only for private purposes and undergone only minor improvements. The road was subsequently used as a public right of way and underwent "public maintenance" performed by Carnahan. The superior court determined that the Davis Road easement was a valid public right of way in 2008, and we affirmed its judgment on appeal. The superior court again, in this case, deemed Davis Road to be a public right of way.

flagged it and posted notices of its impending removal.  Although the Windels contend both that they did not see the notices left on their truck and that the notices were too ambiguously worded to spur them to action, the superior court was not required to credit their testimony.[45]  Because the court properly applied the law and did not clearly err in its findings of fact, we affirm its decision of this issue.

G.     **The Superior Court Did Not Abuse Its Discretion In Its Award Of Attorney's Fees.**

Finally, the Windels challenge the superior court's award to the Borough of 80% of its actual, reasonable attorney's fees, an enhanced award based on the court's finding that "Plaintiffs' claims were baseless, unreasonable, frivolous, and brought in bad faith."  The Windels contend that the enhanced award was improper; they argue that they tried to resolve their issues without litigating, reiterate their arguments on the merits, and assert that they are public interest litigants.

Attorney's fee awards are presumptively based on the schedules set out in Alaska Civil Rule 82(b)(1) and (2).[46]  But a court has discretion to vary an award on consideration of various factors, including the litigation's complexity, "the reasonableness of the claims and defenses pursued by each side," and "vexatious or bad

---

[45]     *See Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010) ("[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.").

[46]     The Windels' reliance on AS 09.60.010(c) to claim constitutional litigant status is precluded by the superior court's finding that their claims were frivolous.  *See* AS 09.60.010(c)(2) (stating that unsuccessful constitutional claimant is protected from attorney's fees award only if, among other things, "the action or appeal asserting the right was not frivolous").

faith conduct."[47] " '[T]he superior court [is] in the best position to evaluate the [parties'] demeanor and credibility' in the fee-award context."[48] We have upheld awards of full attorney's fees when the superior court has found that "the action was 'frivolous and brought to harass the defendants.' "[49]

Of the Windels' 17 claims, all but one were dismissed on summary judgment or on the pleadings; the remaining claim — based on the towing of the Windels' truck — went to trial and resulted in a finding that the Borough had acted appropriately. Most of the Windels' claims had been raised before and decided against them at least once, sometimes twice. Under the circumstances, we cannot say that the superior court abused its discretion by making an enhanced award of attorney's fees.

## V. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[47]    Alaska R. Civ. P. 82(b)(3)(A), (F), (G).

[48]    *Black v. Whitestone Estates Condo. Homeowners' Ass'n*, 446 P.3d 786, 796 (Alaska 2019) (second alteration in original) (quoting *Cook v. Mortenson-Neal*, 727 P.2d 297, 306 (Alaska 1986)).

[49]    *Id.* (quoting *Garrison v. Dixon*, 19 P.3d 1229, 1235 (Alaska 2001)).

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| **Keven Windel and Marlene Windel,** | Supreme Court No. **S-17159** |
| Appellants, | **Order** |
| v. | Petition for Rehearing |
| **Matanuska-Susitna Borough,** | |
| Appellee. | Date of Order: **10/08/2021** |

Trial Court No. **3PA-15-02151CI**

Before:   Winfree, Chief Justice, Bolger, Senior Justice, Maassen, Carney, and Borghesan, Justices.  [Henderson, Justice, not participating.]

On consideration of the Petition for Rehearing filed on 9/7/2021, and the response filed on 9/21/2021,

It is Ordered:

1.   The Petition for Rehearing is **GRANTED**.

2.   Opinion No. 7546 issued on 7/30/2021, is **WITHDRAWN**.

3.   Opinion No. 7560 is issued on this date in its place.

**Footnote 46 at page 18 is inserted in the opinion as follows:**

> The Windels' reliance on AS 09.60.101(c) to claim constitutional litigant status is precluded by the superior court's finding that their claims were frivolous.  See AS 09.60.010(c)(2) (stating that unsuccessful constitutional claimant is protected from attorney's fees award only if, among other things, "the action or appeal asserting the right was not frivolous").

Entered at the direction of the court.

Clerk of the Appellate Courts

/s/ Meredith Montgomery

_____
Meredith Montgomery

cc:    Supreme Court Justices
       Judge Jonathan A. Woodman
       Publishers

Distribution:

    Keven Windel
    3200 South Davis Road
    Wasilla, AK 99654

    Marlene Windel
    3200 South Davis Road
    Wasilla, AK 99654

    John L Aschenbrenner
    Matanuska-Susitna Borough
    350 E Dahlia Ave
    Palmer, AK 99645